STATE OF NORTH CAROLINA v. BILLY DON WILLIAMS

No. 272A84

(Filed 5 September 1985)

1. **Indictment and Warrant § 6.2— probable cause for issuance of arrest warrant**

Information an officer presented to a magistrate was sufficient to establish probable cause for the issuance of warrants for defendant's arrest where it included a statement made by a codefendant in the presence of the officer's colleagues that "If I did what you say, [defendant] was with me when I did it," and it also included a photograph of defendant and a composite of the perpetrator prepared by the victim the morning of the crimes. Therefore, statements made by defendant and items seized from his car were not obtained as a result of an illegal arrest.

2. **Searches and Seizures § 13— warrantless search by consent**

Evidence seized during a warrantless search is admissible if the State proves that the defendant freely and voluntarily, without coercion, duress, or fraud, consented to the search. In determining whether consent is free and voluntary, the court must look to the totality of the circumstances which were present at the time of the search.

3. **Searches and Seizures § 14— consent to search—cooperation made known to district attorney**

An officer's statements to defendant that his cooperation would be made known to the district attorney were not such an inducement as to render involuntary defendant's consent to a search of his automobile where the record did not reveal the slightest hint that defendant was led to believe that he could expect any easier or preferred treatment in exchange for his consent to the search, and where defendant certainly knew, as a result of his age and experience with police practices and procedures, that the district attorney would be made aware of his cooperation as a matter of routine practice.

4. **Criminal Law § 75.2— waivers of counsel—statements by officer—cooperation made known to district attorney**

An officer's statements to defendant that his cooperation would be made known to the district attorney were not such an inducement as to render involuntary his oral and written waivers of counsel.

5. **Criminal Law § 75.11— assertion of right to counsel—subsequent confession—initiation of conversation by defendant**

An officer's delivery of an inventory receipt form to defendant after defendant had invoked his right to counsel did not constitute an "initiation" of conversation with defendant by the officer as that term was used in *Edwards v. Arizona,* 451 U.S. 477 (1981). Furthermore, the officer's return to the jail the next day after defendant asserted his right to counsel was not an initiation of conversation in violation of *Edwards,* but was instead a continuation of a conversation begun by defendant the prior evening, where the officer handed defendant the inventory receipt and turned to walk away; defendant indicated

his desire to "tell his side of the story" after he had some sleep and a shower; the officer told defendant he would return the next morning; and when the officer returned the next morning, he had a jailer contact defendant and ask him whether he still desired to speak with the officer. G.S. 15A-223(b).

**6. Criminal Law § 75.11— assertion of right to counsel—voluntariness of subsequent waiver of right**

Defendant's waiver of counsel and his written statement, made after having previously invoked his right to counsel, were voluntarily and knowingly made under the totality of the circumstances where defendant himself initiated the conversation following the assertion of his constitutional rights, defendant was readvised of his *Miranda* rights, defendant expressly waived his rights in writing, and the waiver was not induced by the officers.

**7. Rape and Allied Offenses § 6.1— first degree rape—instructions on lesser offenses not required by defendant's statement**

In a prosecution for first degree rape, defendant's statement that he "struggled to penetrate without an erection" did not constitute a denial of penetration which required the trial court to instruct on the lesser included offenses of attempted first degree rape and assault on a female.

**8. Criminal Law § 115— denial by defendant—necessity for instructing on lesser offense**

Where a defendant denies having committed a complete offense, such as first degree murder, but there is evidence as to every element which negates that denial, application of *State v. Strickland*, 307 N.C. 274, 298 S.E. 2d 645, would be proper, and the jury would be correctly charged to find the defendant guilty of first degree murder or not guilty. However, where the defendant denies only an element of the offense, such as penetration in the crime of first degree rape, rather than the complete offense, *Strickland* would be inapplicable and it would be incumbent upon the trial judge to place that issue before the jury, which would necessarily include an instruction on some lesser included offense of first degree rape.

**9. Burglary and Unlawful Breakings § 7— first degree burglary—instruction on lesser offenses not required by defendant's statement**

In a prosecution for first degree burglary, defendant's statement to officers did not constitute evidence that he did not intend to commit the specified felonies of first degree rape and armed robbery when he entered the victim's mobile home so as to require the trial court to instruct on misdemeanor breaking and entering where defendant indicated that he agreed to go to the mobile home so that his codefendant could collect some money from his girlfriend; defendant admitted having watched the codefendant enter the mobile home wearing a mask and wielding a "swordlike" knife; defendant admitted that he then watched as the codefendant threatened the girl; and in spite of this, defendant entered the mobile home through a window after having failed to gain entrance through the door.

State v. Williams

**10. Burglary and Unlawful Breakings § 6.3— first degree burglary—felonious intent—instruction in the disjunctive**

In a prosecution for first degree burglary upon an indictment charging a breaking and entering with an intent to commit first degree rape *and* armed robbery, the trial court did not err in instructing the jury that defendant must have intended "to commit rape *or* robbery with a dangerous weapon, *or* both" at the time of the breaking and entering.

**11. Criminal Law § 102.9— jury argument—untruthfulness of defendant's statement**

The district attorney's comments during jury argument on the untruthfulness of defendant's written statement which had been introduced by the State were proper where the record contained other evidence introduced by the State to contradict defendant's written statement.

**12. Criminal Law § 102.9— jury argument—comment on defendant's "morality and character"**

Although the district attorney's comment during jury argument that defendant wouldn't even begin to register on a scale of "morality and character" was inappropriate, such comment did not so exceed the bounds of permissible argument as to require the trial court to sustain defendant's objection thereto where the comment was primarily directed toward defendant's written statement and the lack of credibility derived therefrom.

Justice BILLINGS did not participate in the consideration or decision of this case.

BEFORE *Sitton, J.,* at the 30 January 1984 Criminal Session of Superior Court, BUNCOMBE County, defendant was tried and convicted of first-degree rape, first-degree burglary, and robbery with a dangerous weapon. He received the following sentences: for first-degree rape, life imprisonment; for first-degree burglary, fifteen years to run consecutively to the life sentence; and, for armed robbery, fourteen years to run consecutively to the above sentences. Defendant appeals of right from the imposition of a life sentence. N.C.G.S. § 7A-27(a). Defendant's motion to bypass the Court of Appeals on the other convictions and sentences was allowed 31 May 1984. Heard in the Supreme Court 15 May 1985.

The evidence at trial tended to show that on 5 August 1983, eighteen-year-old Mary Luanne Odom resided with her mother, Nina Odom, in a mobile home in Fairview, North Carolina. Luanne Odom testified that at approximately 2:00 a.m., a man wearing a stocking over his head and carrying a knife appeared in her doorway. The intruder bound and gagged Miss Odom, then he rifled her room. After some fifteen minutes had elapsed, the man placed

his hand on Luanne Odom's left leg. She then kicked him in the stomach and caused him to drop his knife. Only after the knife was picked up by a second man and returned to the first man did Luanne Odom realize that there were two men in her bedroom.

After the second man returned the knife to the first man, Luanne Odom was tied to her bed. Her hands were bound to the headboard with nylon hose, and her right leg was secured to the bed with the cord of an electric blanket. Each man then proceeded to have forced sexual intercourse with Luanne Odom while the other held her left leg.

On direct examination, Luanne Odom identified defendant as the first man who entered her bedroom without permission and who had sexual intercourse with her. She also identified one of the knives taken from defendant's trunk as the one defendant used to threaten her. In an earlier trial, Luanne Odom had identified codefendant Shannone Wayne McClintick as the second man who had sexual intercourse with her.

Michael W. Wright, a crime scene investigator for the Buncombe County Sheriff's Department who testified for the State, stated that he arrived at the Odom residence following the assault. Upon his arrival at approximately 4:00 a.m., Officer Wright discovered a bent window screen lying on the ground beneath an open window near the front of the Odoms' mobile home. Inside Luanne Odom's bedroom, Officer Wright discovered nylon stockings tied to the headboard of the bed and lying on the mattress and an electric blanket control cord tied to the foot of the bed. In addition, Officer Wright observed bed clothing in disarray and an open desk drawer.

Dr. Gary R. Whitaker testified that he was on duty as an emergency physician at Memorial Mission Hospital in Asheville, North Carolina, on 5 August 1983. At approximately 4:45 a.m., he performed a physical examination on Luanne Odom. Based on his findings, Dr. Whitaker concluded that something had been recently inserted into Miss Odom's vagina "under rather insensitive circumstances."

Cathy Buckner and Officer Margaret Mull also testified for the State. Ms. Buckner, a registered nurse at Memorial Mission Hospital, testified as to certain oral statements made by Luanne

Odom while in the emergency room on the morning of the assault. Officer Mull's testimony concerned, *inter alia*, a written statement taken from Miss Odom and a composite drawing of the first perpetrator, both made following her examination at the hospital. The testimony of both of these witnesses was consistent with that offered by the victim.

Defendant presented no evidence in his behalf. On 2 February 1984, verdicts of guilty were returned on all three indictments.

*Lacy H. Thornburg, Attorney General, by Guy A. Hamlin, Special Deputy Attorney General, for the State.*

*David Belser for the defendant-appellant.*

MEYER, Justice.

We note at the outset of our discussion that defendant has abandoned Assignments of Error Nos. 1 through 8, 12, 16, 21, and 22 by failing to advance any argument in his brief to support them. N.C.R. App. P. 28(a). On the basis of his ten remaining assignments of error, defendant contends that the trial court erred (1) by denying his motion to suppress certain evidence, (2) by improperly charging the jury, and (3) by allowing prejudicial statements in the State's closing argument. We find each of these contentions meritless.

I.

Defendant was arrested at his fiancee's home in Swannanoa, North Carolina, at approximately 2:30 p.m. on 9 September 1983. Shortly thereafter, Officer Donald R. Cole of the Buncombe County Sheriff's Department arrived at the scene carrying the warrant for defendant's arrest that had been issued earlier that day. Officer Cole, who was familiar with the defendant from a prior criminal matter, advised defendant of his *Miranda* rights, including his right to remain silent and his right to have counsel present during questioning. Defendant orally waived those rights and before questions were asked of him, stated to Officer Cole, "I need some help." Officer Cole told defendant that he needed his cooperation and further informed him that the District Attorney would be made aware of that cooperation. Defendant then signed a written consent to search form, obtained the keys to his car, and opened

its trunk. In the trunk of defendant's car, Officer Cole found two knives.

After the search, defendant was transported to the Buncombe County courthouse, where he was questioned by Officers W. K. Ingle and Margaret Mull of the Buncombe County Sheriff's Department. At that time, defendant requested the assistance of counsel, and all questioning ceased. Officer Cole was then informed of defendant's request.

Some thirty minutes after defendant invoked his right to counsel, Officer Cole delivered to defendant an inventory of the items seized from his automobile. The two spoke briefly. As a result of that discussion, Officer Cole agreed to return the next morning, if defendant still so desired, and discuss the events leading to defendant's arrest.

The next day, Officer Cole obtained a generally inculpatory written statement from the defendant. The statement contained a detailed account of the actions of the defendant and codefendant, McClintick, on the night in question. Essentially, defendant admitted his participation in the acts for which he was indicted and tried, but stated that he believed that the victim was McClintick's girlfriend and implied that their actions were, therefore, consented to.

In apt time, counsel for defendant moved to suppress all statements that defendant may have made, oral and written, and the knives obtained as a result of the warrantless but consensual search of his car. The trial court conducted an extensive voir dire hearing on defendant's motion to suppress in the absence of the jury and made findings of fact and conclusions of law. At the conclusion of that hearing, the trial court denied defendant's motion to suppress. Defendant's statement was introduced at trial by the State through the testimony of Officer Cole.

Defendant first assigns error to the trial court's denial of his motion to suppress certain statements made by him and physical evidence seized during the search of his car. Specifically, defendant contends that there was no probable cause for his arrest, that the consent to search his car and waivers of counsel were not voluntarily and knowingly made, and that his written statement was given in violation of his right against compelled self-incrimi-

nation as guaranteed by the Fifth Amendment to the United States Constitution.

[1] Defendant initially argues that the information Officer Cole presented to the magistrate was insufficient to establish probable cause and that the warrants issued for his arrest were therefore invalid, citing *Dunaway v. New York*, 442 U.S. 200, 60 L.Ed. 2d 824 (1979) (evidence obtained by the exploitation of an arrest unsupported by probable cause must be suppressed).

Although the trial judge did not specifically state in his findings what evidence was presented to the magistrate, he did find that "certain" evidence was presented. The record is clear in this regard.

Probable cause refers to those facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information which are sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense. *Beck v. Ohio*, 379 U.S. 89, 13 L.Ed. 2d 142 (1964); *State v. Zuniga*, 312 N.C. 251, 322 S.E. 2d 140 (1984).

The trial judge found as fact that "certain information" was furnished to the magistrate by Officer Cole. The record reveals that this information included a statement made by codefendant McClintick in the presence of Officer Cole's colleagues. That statement was, "If I did what you say, Billy Don Williams was with me when I did it." Additionally, Officer Cole showed the magistrate a photograph of defendant and the composite of the perpetrator prepared by Luanne Odom the morning of her rape. "It is well recognized that a description of either a person or an automobile may furnish reasonable ground for arresting and detaining a criminal suspect." *State v. Jacobs*, 277 N.C. 151, 154, 176 S.E. 2d 744, 746 (1970) (citations omitted).

We hold that defendant's arrest was supported by probable cause to believe that defendant had committed the crimes for which he was later convicted.

Defendant next argues that the knives taken from his car following the consent search should have been suppressed because that consent was not given freely, voluntarily, and understandingly but was instead "the product of promises and inducements of hope." Defendant bases this contention on the alleged

trust relationship which defendant perceived to exist between himself and Officer Cole. Defendant further argues that this perception, combined with Officer Cole's repeated statements to defendant that his cooperation would be made known to the District Attorney, created strong "suggestions of hope" which render his consent involuntary. We cannot agree.

[2] Evidence seized during a warrantless search is admissible if the State proves that the defendant freely and voluntarily, without coercion, duress, or fraud, consented to the search. *State v. Long*, 293 N.C. 286, 237 S.E. 2d 728 (1977). In determining whether consent is free and voluntary, the Court must look to the totality of the circumstances which were present at the time of the search. *Id.*

While testifying on voir dire, both defendant and Officer Cole admitted knowing each other as a result of previous criminal matters involving the defendant. Both also stated that in one of those matters a charge of common law robbery was reduced to larceny and as a result, defendant received a suspended sentence. Officer Cole testified that he arrived at the scene of the arrest pursuant to a request from defendant. Once there, he had defendant's handcuffs removed because of his familiarity with him. Officer Cole then told defendant that he had been truthful with him regarding previous criminal matters and that he expected defendant to be truthful in this case, too. However, Officer Cole denied having reminded defendant of the specifics of any previous case. Finally, Officer Cole admitted to having stated to defendant several times that he would advise the District Attorney's office of his cooperation.

To some extent, defendant's testimony on voir dire was inconsistent with that of Officer Cole's. Defendant readily acknowledged Cole's promises to advise the District Attorney of his cooperation. However, according to defendant, it was not he who asked for Cole but Cole who asked if defendant wished to speak with him. Defendant further stated that before he gave his consent, Officer Cole reminded him that he had helped him before and that he would do everything he could to help him in this instance.

The trial judge made the following findings of fact pertinent to the issue of defendant's consent to search his car:

That the Defendant has been previously arrested, based upon his testimony, approximate [sic] six times, and has been incarcerated or confined at the Buncombe County Sheriff's Department and understands their procedure as to booking and lockup and that he understood the use of the phone and further understood and had experience with having been advised of his Constitutional Rights; that no promises, offers of reward or inducements by any law enforcement officer were made to the Defendant to make any oral or written statement or to consent to the search of his vehicle; that the allowance of the officer for the Defendant to have his handcuffs removed from his back and placed on his hands in front and to smoke, nor the statement made by officer Donnie R. Cole that he would advise the District Attorney's Office of his cooperation were sufficient to constitute an inducement on behalf of the Defendant to make a statement; . . . .

That there is lack of evidence in regard to the Defendant's statement that he trusted the officer and that the officer had helped him on a previous occasion, there being a mere dropping of the charges of common law robbery to larceny by the District Attorney, and there being insufficient evidence in regard to this officer causing said lesser included offenses to be accepted as pleas for the offenses against the Defendant on prior occasions, or a prior occasion.

Based on these findings, the trial court concluded as a matter of law that:

[T]he consent given by the Defendant to the officer on the afternoon of September 9th, 1983, was given freely, voluntarily, understandingly and without any coercion, duress or fraud upon the Defendant; that based upon the totality of the circumstances at the time, the Court concludes that the search was a valid search, with the consent of the Defendant, and that the objects taken from the vehicle as a result of the search are such as to come within the purview of the search; . . . that there was no threat or suggest [sic] of violence or show of violence to persuade or induce the Defendant to . . . sign any consent form to search . . . .

Findings of fact that are supported by competent evidence are binding on appeal. *State v. Booker*, 306 N.C. 302, 293 S.E. 2d

78 (1982). However, the conclusions of law drawn from those findings are reviewable by the appellate courts. *Id.*

Having resolved any conflicts in the voir dire testimony against the defendant, the trial court specifically found that there was no evidence to support defendant's subjective perception that Officer Cole had "helped" defendant on a previous occasion and would, therefore, "help" him with this matter. This finding of fact is supported by competent evidence and is binding on appeal. The trial court made a further "finding," more in the nature of a conclusion, that Officer Cole's express promise to defendant that the District Attorney would be informed of any cooperation was not sufficient to constitute an inducement to the defendant to make a statement and that "no promises, offers of reward or inducements were made to the Defendant to make any oral or written statement or to consent to the search of his vehicle."

[3] Defendant relies on *State v. Fuqua*, 269 N.C. 223, 152 S.E. 2d 68 (1967), to argue that Officer Cole's promise created strong "suggestions of hope" of aid which rendered his statement and his consent to search involuntary in light of all the circumstances. In contrast to the situation in this case, the defendant in *Fuqua* was told by a police officer that the officer would *testify* as to the defendant's cooperation if the defendant would give a statement. Accordingly, we held that such a statement by a person in authority gave the defendant a clear hope for lighter punishment if he confessed, which rendered his confession involuntary and inadmissible. *Fuqua*, 269 N.C. at 228, 152 S.E. 2d at 72. Thus, *Fuqua* is clearly distinguishable from the case under discussion, and defendant's reliance upon it is misplaced.

More to the point is our fairly recent holding in *State v. Branch*, 306 N.C. 101, 291 S.E. 2d 653 (1982). In *Branch*, police officers promised the defendant "that we would talk with the District Attorney if he made a statement which admitted his involvement." 306 N.C. at 109, 291 S.E. 2d at 659. We held that the defendant's inculpatory statement was not rendered involuntary by any suggestion of hope reasonably induced by the interrogating officers' comment, and further stated that:

> [T]his statement by Lieutenant Turner could not have aroused in the defendant, a man 29 years of age and of sound intellect, any reasonable hope of reward if he confessed. In-

stead, we think that any suspect of similar age and ability would expect that the substance of any statement he made would be conveyed to the District Attorney in the course or normal investigative and prosecutorial procedures. The statement by Lieutenant Turner in no way hinted that the defendant could expect easier or preferred treatment if he confessed to the crime under investigation. The absence of any such indication that preferential treatment might be given in exchange for his confession makes the present case easily distinguishable from *Fuqua.*

*Branch*, 306 N.C. at 109-10, 291 S.E. 2d at 659.

Similarly, in this case, the record does not reveal the slightest hint that the defendant was led to believe that he could expect any easier or preferred treatment in exchange for his consent to search his automobile. The trial court made detailed findings as to defendant's age and experience with police practices and procedures and his resulting understanding of all of his constitutional rights. As was true of the defendant in *Branch*, the defendant in this case certainly knew, as a result of his age and experience, that the District Attorney would be made aware of his cooperation as a matter of routine practice. Accordingly, we hold that the trial court correctly determined that Officer Cole's statement to the defendant did not constitute an inducement to defendant to consent to the search of his automobile as a matter of law, and correctly denied the defendant's motion to suppress the evidence discovered during the course of that search.

We find no error in the trial court's conclusion that the promise by Officer Cole, that the District Attorney would be informed of any cooperation, was not such an inducement as to render defendant's statements and his consent to have his automobile searched involuntary.

[4] Defendant also contends that his oral and written waivers of counsel were the product of the same promises and inducements which allegedly vitiated his consent to the search of his automobile. The test for determining the voluntariness of a waiver of counsel is similar to that for determining the voluntariness of a consent to search. Prior to any questioning, the suspect must be warned of his constitutional rights, including his right to remain silent and his right to have an attorney present during question-

ing. *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694 (1966). "The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." *Id.* at 444, 16 L.Ed. 2d at 707; *see State v. Dampier*, 314 N.C. 292, 333 S.E. 2d 230 (1985). The voluntariness of a waiver must be based on the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. *North Carolina v. Butler*, 441 U.S. 369, 60 L.Ed. 2d 286 (1979).

The trial court made one set of findings of fact with respect to the alleged inducements to support both its conclusion that the consent was voluntarily given for the search and its conclusion that defendant was in full understanding of his constitutional rights when he "freely, knowingly, intelligently and voluntarily waived each of those rights," including the right to counsel. For the reasons stated above, we hold that the trial court's findings of fact on this issue are supported by competent evidence and that they, in turn, support its conclusion of law that defendant voluntarily waived his right to counsel at the time of his questioning.

[5] Finally, defendant contends that his written statement was taken in violation of *Edwards v. Arizona*, 451 U.S. 477, 68 L.Ed. 2d 378, *reh'g denied*, 452 U.S. 973, 69 L.Ed. 2d 984 (1981). In *Edwards*, the United States Supreme Court held that once a suspected criminal invokes his right to counsel, he may not be questioned further until counsel is provided unless the suspected criminal himself initiates the dialogue, at which time he may waive his right to have an attorney present. Defendant argues that both Officer Cole's delivery of the inventory form and his subsequent contact with the defendant the following morning constituted the initiation of conversation by someone other than defendant.

In *Oregon v. Bradshaw*, 462 U.S. 1039, 77 L.Ed. 2d 405 (1983), the defendant had already invoked his right to counsel when, while in transit from the police station to a jail, he asked of an officer, "Well, what is going to happen to me now?" The Supreme Court held that the defendant's question "evinced a willingness and a desire for a generalized discussion about the investigation." *Bradshaw*, 462 U.S. at 1045-46, 77 L.Ed. 2d at 412. In so holding, the Court reasoned that:

While we doubt that it would be desirable to build a super-structure of legal refinements around the word "initiate" in this context, there are undoubtedly situations where a bare inquiry by either a defendant or by a police officer should not be held to "initiate" any conversation or dialogue. There are some inquiries, such as a request for a drink of water or a re-quest to use a telephone that are so routine that they cannot be fairly said to represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation. Such inquiries or statements, by either an accused or a police officer, relating to routine in-cidents of the custodial relationship, will not generally "initi-ate" a conversation in the sense in which that word was used in *Edwards*.

*Bradshaw*, 462 U.S. at 1045, 77 L.Ed. 2d at 412.

For similar reasons, we conclude that Officer Cole's delivery of the seizure inventory form to defendant was not an "initiation" of conversation as that term was used in *Edwards*. Indeed, law enforcement authorities are required "to make a list of the things seized, and . . . deliver a receipt embodying the list to the person who consented to the search." N.C.G.S. § 15A-223(b). The fact that delivery of the receipt was made after a request for the presence of an attorney does not alter the routineness of such a delivery nor does it thereby constitute the initiation of questioning.

We also conclude that Officer Cole's return to the jail the next day did not constitute an initiation of conversation in viola-tion of *Edwards*, but was instead a continuation of the conversa-tion begun by defendant on the evening of his arrest. The trial judge found that on 9 September 1983 Officer Cole handed de-fendant the inventory receipt and turned to walk away; that de-fendant indicated his desire to "tell his side of the story" after he had some sleep and a shower; that Cole told defendant he would return the next morning; and that when Cole returned on the morning of 10 September, he had a jailer contact defendant and ask him whether he still desired to speak with Officer Cole. The record fully indicates that it was defendant who, on the evening of his arrest, initiated the discussion which led to the making of his written statement the following morning. Defendant's desire

to rest and bathe merely delayed the carrying out of his desire to tell Officer Cole "his side of the story." By so doing, defendant simply postponed finishing the conversation already begun by him. We hold that the return of Officer Cole on the morning after defendant asserted his right to counsel was merely a continuation of the conversation initiated by defendant the previous evening and did not violate the rule in *Edwards*.

[6] Having found no violation of the *Edwards* rule, we must next determine whether under the totality of the circumstances, defendant's written statement was voluntarily and knowingly made. *Dampier*, 314 N.C. 292, 333 S.E. 2d 230; *State v. Bishop*, 272 N.C. 283, 158 S.E. 2d 511 (1968). That is, we must determine whether defendant's waiver of counsel was "knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities." *Edwards*, 451 U.S. at 486, n.9, 68 L.Ed. 2d at 387.

The trial court found that defendant was re-advised of his *Miranda* rights upon his being brought down to an interrogation room following Officer Cole's inquiry. There, defendant expressly waived these rights in the written statement of waiver which he signed. Having already concluded that this waiver was not induced and that defendant himself initiated the conversation following the assertion of his constitutional rights, we further conclude that defendant's waiver was knowingly and intelligently made under the totality of the circumstances.

On defendant's motion to suppress, the trial court concluded "that none of the Constitutional Rights, either Federal or State, of the Defendant were violated by his arrest, detention, interrogation or statements made on September 9th to Officer Cole, nor his statement written or oral statements made to Officer Cole on September 10th, 1983." We find that this conclusion is supported by the findings of fact which in turn are supported by the evidence. We hold that defendant's motion to suppress the evidence in question was properly denied.

II.

[7] Defendant next assigns as error the failure of the trial court to instruct the jury on certain lesser-included offenses of rape in

the first degree. The jury was instructed to find defendant guilty of first-degree rape or not guilty. Defendant contends that the evidence as to the essential element of penetration was equivocal and, therefore, additional instructions on attempted first-degree rape and assault on a female were required. We find no merit in this contention.

It is well established that the trial judge must declare and explain the law arising upon the evidence. N.C.G.S. § 15A-1232. Where there is evidence to support a charge upon a lesser-included offense, the judge must so instruct even absent a special request. *State v. Wright*, 304 N.C. 349, 283 S.E. 2d 502 (1981). "However, when the State's evidence is clear and positive with respect to each element of the offense charged and there is no evidence showing the commission of a lesser included offense, it is not error for the trial judge to refuse to instruct on the lesser offense." *State v. Hardy*, 299 N.C. 445, 456, 263 S.E. 2d 711, 718-19 (1980). "Instructions on the lesser included offenses of first-degree rape are warranted only when there is some doubt or conflict concerning the crucial element of penetration." *State v. Wright*, 304 N.C. 349, 353, 283 S.E. 2d 502, 505. Evidence of the slightest penetration of the female sex organ by the male sex organ is sufficient for vaginal intercourse and the emission of semen need not be shown to prove the offense of rape. *State v. Brown*, 312 N.C. 237, 321 S.E. 2d 856 (1984).

In support of his contention that the trial court erred in refusing to instruct on the lesser-included offenses, defendant relies on his written statement, the trial judge's summation of defendant's evidence elicited on cross-examination, and the trial court's alleged improper reliance on *State v. Strickland*, 307 N.C. 274, 298 S.E. 2d 645 (1983). Defendant's written statement reads in pertinent part as follows:

> I embarrassingly removed my pants to my knees, and without touching her elsewhere, *struggled to penetrate without an erection.* At this the girl began a muffled laugh, so I got up and dressed as Shannone was going through her purse. (Emphasis added.)

Defendant argues that when this excerpt is read in the context of his entire written statement, it is essentially a denial of penetration. The trial judge apparently agreed with defendant's interpre-

tation since he reiterated this portion of the statement in his summation of the evidence. However, we find no evidence in the record to support such a conclusion.

The simple fact that a person struggles to accomplish some feat, taken by itself, implies neither success nor failure. The fact that defendant "struggled to penetrate" is far from equivocal and in no way negates a completed act. A careful reading of defendant's statement as a whole fails to alter this observation. While penetration is best achieved when there is an erection, by no means can penetration to the degree necessary to satisfy the penetration element of rape be excluded because there is no erection. *See State v. Brown*, 312 N.C. 237, 321 S.E. 2d 856 (1984). Luanne Odom testified unequivocally that defendant inserted "his penis . . . into my vagina." Though we find the trial judge's interpretation of defendant's statement unfortunate, we hold that Luanne Odom's testimony and defendant's failure to deny penetration compelled the instruction given by the trial court.

Although the trial court's instructions on first-degree rape were proper, there is some indication in the record that language from *Strickland*, 307 N.C. 274, 298 S.E. 2d 645, inappropriately provided the basis for those instructions. In *Strickland*, the defendant was convicted for first-degree murder although he alleged an alibi and thereby denied having committed any offense. We stated:

> The determinative factor is what the State's evidence tends to prove. If the evidence is sufficient to fully satisfy the State's burden of proving each and every element of the offense of murder in the first degree, including premeditation and deliberation, and there is no evidence to negate these elements other than defendant's denial that he committed the offense, the trial court should properly exclude from jury consideration the possibility of a conviction of second degree murder.

*Strickland*, 307 N.C. at 293, 298 S.E. 2d at 658.

[8] Where a defendant denies having committed a complete offense, such as murder, but there is evidence as to every element which negates that denial, application of *Strickland* would indeed be proper. In that situation, the jury would be correctly charged

to find the defendant guilty of murder or not guilty. However, in a case such as rape, where the only evidence of the defendant's innocence as to a particular *element* may rest solely on the defendant's denial, then reliance on *Strickland* would be misplaced. Had the defendant unequivocally denied the essential element of penetration, it would have been incumbent upon the trial judge to have placed that issue before the jury. This would have necessarily included an instruction on some lesser-included offense of first-degree rape. However, as we stated earlier, defendant's statement simply failed to constitute a denial of the element of penetration in this case. We merely take this opportunity to caution our trial judges against the reliance upon *Strickland* in giving jury instructions where the defendant denies only an element of the offense as opposed to denial of the complete offense.

[9] Defendant similarly assigns as error the trial court's failure to instruct the jury on a lesser-included offense of burglary in the first degree. The trial judge instructed the jury to find defendant guilty of either first-degree burglary or not guilty. Defendant contends that a rational trier of fact could find, based on his written statement, that he did not intend to commit the specified felonies of first-degree rape and armed robbery upon entering the Odom's mobile home; therefore, an instruction on misdemeanor breaking or entering was required. We find this contention meritless.

The statement which defendant gave to Officer Cole is as follows:

On August 5th I was leaving McKell's to return to my fiancee's in Swannanoa when I met an old friend, Shannone Sherlin Brackett, in the parking lot. After becoming reacquainted he mentioned that someone in Fairview owed him some money and wanted a ride there to get it. I was hesitant in agreeing, since I was already late, but I did. Upon leaving we rode around and drank a beer, then headed to Fairview, where he told me — told where me [sic] to pull over and park. After getting out of the car, I noticed that he had a large knife in his belt. He started walking up the hill and motioned for me to be quiet. I followed him to a trailer where he tried to open the door and walked quietly around the window and motioned for me to do the same. I found that he was looking in the window at a girl lying in bed reading a book. Then he

motioned for me to wait there and again be quiet. I stood silently as Shannone walked around toward the front of the trailer. Then I heard a loud noise, and so did the girl, but she went back to reading, and I looked around the corner of the trailer to see Shannone going in the window. This puzzled me, but being under the impression that this was his girlfriend, I thought he was going to surprise her. I soon learned different. Then I returned to the window and observed and observed [sic] Shannone wearing a stocking over his head and holding the swordlike knife in his hand. He walked from the bedroom door and started toward her with the knife. He held his hand over her mouth so she wouldn't scream and in a low voice started threatening her with the knife. He had her turn over face down on the bed and placed a pillow over her head. He then threatened to kill her if she screamed or moved and got up and motioned for me to come in. At this point I was in a state of shock and panic. I went around the trailer and tried the door, but it was locked, so I went in the window and noticed an object on the floor. I stepped over the object and proceeded toward the bedroom. When I entered the room, Shannone was struggling with the girl, and she scratched his back with her long nails. He began to tie her up and realizing what was going on I said audibly, "No, Shannone." He then turned to me with the knife and started to get up when the victim got her head out from under the pillow and stared directly into my face. Shannone then covered her face and continued to restrain her arms and legs when she started kicking and in the fury kicked at me and stared at me again. He then began to threaten her with the knife and she relaxed totally, and I released her leg, ankle. Shannone then asked for my bandana which he used to blindfold her and began removing her undergarments. The girl remained totally relaxed as Shannone began to orally seduce her and snicker and giggle at me. It wasn't until Shannone tried to penetrate her through intercourse that she began to struggle and tried to scream. Shannone kept insisting that she liked it and that he had done it before. I wanted nothing to do with any lewd act of this nature. Shannone's continuing insistency led me to believe this was really his girlfriend. Her minimal struggle reassured me this was really his acquaintance. I embarrasingly removed my pants to my knees,

and without touching her elsewhere, struggled to penetrate without an erection. At this the girl began a muffled laugh, so I got up and dressed as Shannone was going through her purse. I started toward the door, and he began to untie her. I continued to the back door, where I waited outside. Shannone came out and said, "Let's go," in his usually excited voice and began running back to the car. Upon leaving he showed me her bank card and said he had to get to a Wachovia to get some money for her. I drove to Wachovia in Beverly Hills, and he went to the Teller II and withdrew $180. He then wanted to go to Patton Avenue and gave me some money for gas, so I took him. We stopped at another Wachovia Teller at Patton Avenue. I then took him to LaMancha and proceeded to my girlfriend's house in Swannanoa.

Common law burglary is defined as the breaking and entering of a dwelling house of another in the nighttime with the intent to commit a felony therein. *State v. Cooper*, 288 N.C. 496, 219 S.E. 2d 45 (1975). Burglary in the first degree occurs when the crime is committed while the dwelling house or sleeping apartment is actually occupied by any person. N.C.G.S. § 14-51 (1981). If at the time of a breaking and entering a person does not possess the intent to commit a felony therein, he may only properly be convicted of misdemeanor breaking or entering. *State v. Peacock*, 313 N.C. 554, 330 S.E. 2d 190 (1985).

In his statement, defendant indicated that he agreed to go to the mobile home so that codefendant McClintick could collect some money which his girlfriend owed to him. According to defendant, he watched as McClintick entered the mobile home through a window, thinking that his friend was going to "surprise" the girl; and, once McClintick was inside, defendant watched as McClintick threatened the girl with a knife. Defendant was then motioned to come in, and he entered the mobile home "in a state of shock and panic." Defendant contends that this evidence was sufficient to justify a charge on non-felonious breaking or entering.

Instead of supporting his contention, it is defendant's own written statement that undermines it. Defendant admits having watched McClintick enter the mobile home wearing a mask and wielding a "swordlike knife." He then watched as McClintick

threatened the girl. At that point, it was amply clear to defendant that McClintick was not intending to merely "surprise" the girl. In spite of this, defendant entered the mobile home through a window after having failed to gain entrance through the door. This action negates any assertion on defendant's part that he did not possess the intent to commit the felonies specified in the indictment when he entered the mobile home. We, therefore, find that the evidence was clear and positive on the intent element of burglary at issue here and hold that because there was no evidence of the commission of a lesser-included offense than first-degree burglary, the trial court correctly charged only on that offense. *See State v. Hardy*, 299 N.C. 445, 263 S.E. 2d 711 (1980).

**[10]** Defendant next contends that the trial court erred by instructing the jury that defendant must have intended "to commit rape *or* robbery with a dangerous weapon, *or* both" at the time of the breaking and entering and that such instruction violated defendant's right to a unanimous jury verdict.

This Court has held that where an indictment is phrased in the conjunctive, e.g., rape *and* robbery, it is proper for the trial court to instruct the jury that it may convict for the indicted offense if it finds that defendant committed either or both of the particular felonies alleged to support the indictment. *State v. Simmons*, 286 N.C. 681, 213 S.E. 2d 280 (1975), *death sentence vacated*, 428 U.S. 903, 49 L.Ed. 2d 1208 (1976). On 14 September 1983, defendant was charged in an indictment, proper in form, with the first-degree burglary of the home of Nina and Luanne Odom. In pertinent part, the indictment states that "defendant broke and entered the dwelling house with the intent to commit a felony therein: first degree rape & armed robbery." In its final mandate, the trial court instructed the jury that its verdict must be unanimous. Therefore, we find no merit in this contention.

## III.

By his final assignments of error, defendant contends that the District Attorney's closing argument to the jury resulted in prejudicial error which denied him a fair trial. At the charge conference, defendant moved the trial court "to prohibit the State from arguing to the jury that the Defendant's confession is not, in fact, truthful." Following closing arguments, defendant moved for

a mistrial based upon alleged improper remarks made by the State during closing. The trial court denied both of these motions.

In support of his contention, defendant relies on the following pertinent portions of the State's final argument:

> If it were true that I had to be bound by this man's words when I put them into evidence, I never would have, because I would never stand in front of you and vouch for that man's credibility.

> . . . .

> I contend to you, ladies and gentlemen, if you listen to this statement, that it's so far fetched and incredible in and of itself that it's not worthy of belief.

> . . . .

> . . . I submit to you the truth has been in this courtroom and it came from the lips of that young lady sitting over there, ladies and gentlemen, and you can put your faith and trust in it. She is credible, and the other evidence presented to you corroborates her and validates her and substantiates her in every respect. You think about the evidence that does that, ladies and gentlemen, and when you do that and you contrast her credibility with the credibility of that man over there, I want you to put them on an imaginary scale of morality and character, and I guarantee you that that man over there wouldn't even begin to register on that scale.

[11] The introduction of an exculpatory statement by the State does not preclude it from showing facts concerning the crime to be different. *State v. May*, 292 N.C. 644, 235 S.E. 2d 178, *cert. denied*, 434 U.S. 928, 54 L.Ed. 2d 288 (1977). The State is entitled to comment during closing argument on any contradictory evidence as the basis for the jury's disbelief of the defendant's story. *State v. Brock*, 305 N.C. 532, 290 S.E. 2d 566 (1982). The record here plainly exhibits plenary evidence introduced by the State to contradict defendant's written statement. During her closing argument, the District Attorney indeed commented on the untruthfulness of that statement. This the law allowed her to do. We, therefore, hold that defendant's motion in limine at the

charge conference and his motion for mistrial at the close of the evidence were both properly denied.

[12] Defendant also contends that the trial court erred in failing to sustain timely objections to other alleged improper remarks by the District Attorney during closing argument. Defendant specifically argues that the prosecutrix "repeatedly disparaged the truthfulness of the defendant" and that such comments "culminated in direct, highly improper attacks on both his credibility and his morality and character." The law in this area is well settled:

> We have consistently held that counsel must be allowed wide latitude in the argument of hotly contested cases. He may argue to the jury the facts in evidence and all reasonable inferences to be drawn therefrom together with the relevant law so as to present his side of the case. Whether counsel abuses this privilege is a matter ordinarily left to the sound discretion of the trial judge, and we will not review the exercise of this discretion unless there be such gross impropriety in the argument as would be likely to influence the verdict of the jury. Even so, counsel may not employ his argument as a device to place before the jury incompetent and prejudicial matter by expressing his own knowledge, beliefs and opinions not supported by the evidence[.] It is the duty of the trial judge, upon objection, to censor remarks not warranted by the evidence or the law and, in cases of gross impropriety, the court may properly intervene, *ex mero motu*. (Citations omitted.)

*State v. Covington*, 290 N.C. 313, 327-28, 226 S.E. 2d 629, 640 (1976).

Although we find the District Attorney's aforementioned commentary as to defendant's "morality and character" inappropriate, we do not find that such comments so exceeded the bounds of permissible argument as to require the trial court to sustain defendant's objections. The prosecutrix's entire argument indicates that the disputed comments were primarily directed towards defendant's written statement and the lack of credibility derived therefrom. We also note that when the District Attorney came close to commentary on defendant's failure to testify, the trial court interrupted *ex mero motu* and instructed the jury to ignore any such comment. Therefore, we hold that the trial court

did not err in failing to sustain defendant's timely objections during closing argument.

Finally, defendant argues that the trial court erred in failing to grant a motion for mistrial based on these alleged improper remarks by the State in its final argument. Having already concluded that there were no prejudicial remarks, we hold that the trial judge correctly denied defendant's motion.

We conclude that defendant received a fair trial, free from prejudicial error.

No error.

Justice BILLINGS did not participate in the consideration or decision of this case.