STATE OF NORTH CAROLINA
v.
MICHAEL ANDREW ROUGHTON, Defendant.
No. COA09-536.
Court of Appeals of North Carolina.
Filed December 22, 2009.
This case not for publication
Roy Cooper, Attorney General, by Elizabeth F. Parsons, Assistant Attorney General, for the State.
Staples Hughes, Appellate Defender, by Benjamin Dowling-Sendor, Assistant Appellate Defender, for defendant-appellant.
MARTIN, Chief Judge.
Defendant appeals from judgments entered upon his convictions of two counts of first degree statutory rape and two counts of taking indecent liberties with a child. We find no error in part, vacate in part and remand in part.
Defendant and the complainant, J.A.B., first became acquainted sometime after December of 2006 when defendant visited his mother in Wilson, North Carolina for the Christmas holiday. Defendant's mother and J.A.B.'s mother were friends and would often get their families together for social visits. At times, defendant would go over to J.A.B.'s house, and, on other occasions, J.A.B. would go to defendant's house while her mother was at work. It was during these visits that defendant, who was nineteen years old at the time, engaged in sexual acts with J.A.B., who was then twelve years of age.
In September 2007, J.A.B. told her stepsister what had occurred between her and defendant, and J.A.B.'s stepsister later relayed this information to J.A.B.'s mother ("Ms. Stubbins"). Ms. Stubbins confronted defendant and told him that he was going to prison. After this conversation, defendant's mother advised him to turn himself in to the police, and defendant complied. The police transferred defendant to the Wilson County Sheriff Department, where he first talked with Officer Charles Dube ("Officer Dube"). Officer Dube began his conversation with defendant by informing him that he was not under arrest. Despite this, defendant continued talking, urging Officer Dube to arrest him because he had been having sex with a twelveyearold girl. Officer Dube then decided to call Detective Calvin Woodard ("Detective Woodard") to properly continue the interview with defendant.
Before Detective Woodard could reach the Sheriff's Department, he received a call from a 911 operator informing him that J.A.B.'s father had reported the sexual assault of his daughter. Thus, Detective Woodard decided to talk with J.A.B.'s family before talking with defendant at the Sheriff's Department. When Detective Woodard arrived at the Sheriff's Department, he began his interview with defendant by reading him his rights. Defendant then proceeded to give Detective Woodard a confession in which he admitted to having sexual intercourse with J.A.B. In fact, he stated in his confession that he "placed it in her vagina" on multiple occasions. Detective Woodard reviewed the written confession with defendant and then had him sign it.
Defendant was indicted for two counts of first degree statutory rape pursuant to N.C.G.S. § 14-27.2(a)(1) and two counts of taking indecent liberties with a child pursuant to N.C.G.S. § 14-202.1. He pleaded not guilty and the case came to trial on 2 June 2008. On 4 June 2008, the jury found defendant guilty of all charges. The trial court ordered that defendant be referred for a Presentence Diagnostic Study at the Department of Correction. The study was completed on 8 September 2008.
At sentencing, defendant was found to have a prior record level of I. The trial court consolidated the two convictions of first degree statutory rape, imposed a sentence in the presumptive range and ordered that defendant be imprisoned for a minimum term of 240 months and a maximum term of 297 months. For the first conviction of taking indecent liberties with a child, defendant was sentenced within the presumptive range and ordered to be imprisoned for a minimum term of 16 months and a maximum term of 20 months. This sentence was to run consecutively to the sentence imposed for the first degree statutory rape convictions. For the second conviction of taking indecent liberties with a child, defendant was sentenced within the presumptive range and ordered to be imprisoned for a minimum term of 16 months and a maximum term of 20 months. The trial court suspended this sentence and placed defendant on three years supervised probation to begin after the expiration of the active sentence imposed for the first taking indecent liberties with a child conviction. The trial court additionally ordered defendant to submit to lifetime satellitebased monitoring. Defendant appeals.
On appeal, defendant raises three issues: (I) whether the trial court erred in denying his motion to dismiss the charges of first degree statutory rape for insufficiency of the evidence under the corpus delicti rule; (II) whether the trial court committed plain error in failing to instruct the jury on the lesserincluded offense of attempted first degree statutory rape; and (III) whether the trial court erred in ordering defendant to enroll in lifetime satellitebased monitoring.

I.
In his first argument, defendant contends that his motion to dismiss was improperly denied because the evidence produced, independent of his extrajudicial confession, was insufficient to support his convictions of first degree statutory rape. We disagree.
In reviewing the denial of a motion to dismiss, this Court uses a de novo standard. State v. Bagley, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007). A motion to dismiss is properly denied when there is sufficient evidence to support a conviction of the charged offense. See N.C. Gen. Stat. § 15A-1227(a) (2007); see also Bagley, 183 N.C. App. at 522-23, 644 S.E.2d at 621. "Evidence is sufficient to sustain a conviction when, viewed in the light most favorable to the State and giving the State every reasonable inference therefrom, there is substantial evidence to support a [jury] finding of each essential element of the offense charged, and of defendant's being the perpetrator of such offense." Bagley, 183 N.C. App. at 523, 644 S.E.2d at 621 (citations and internal quotation marks omitted) (alterations in original).
The essential elements of first degree statutory rape for which defendant was charged are: (1) "vaginal intercourse;" (2) with a victim "under the age of 13;" (3) when "the defendant is at least 12 years old;" and (4) the defendant "is at least four years older than the victim." N.C. Gen. Stat. § 14-27.2(a)(1) (2007). Of these elements, defendant only challenges the evidence offered to prove the occurrence of vaginal intercourse; thus, we need not address the evidence supporting the other elements of this offense. N.C.R. App. P. 28(b)(6) (amended Oct. 1, 2009). To establish the element of vaginal intercourse, the State need only produce "evidence of the slightest penetration of the female sex organ by the male sex organ." State v. Brown, 312 N.C. 237, 244-45, 321 S.E.2d 856, 861 (1984). Such evidence may sufficiently be provided "by the testimony of the prosecutrix and corroborating circumstances or by circumstantial evidence." State v. Robinson, 310 N.C. 530, 534, 313 S.E.2d 571, 574 (1984).
Thus, in State v. Estes, 99 N.C. App. 312, 393 S.E.2d 158 (1990), this Court looked to the victim's testimony in upholding the trial court's denial of defendant's motion to dismiss. Estes, 99 N.C. App. at 316, 393 S.E.2d at 160. In that case, the victim testified that the defendant "stuck his thing" in the "back and front" of her. Id. at 314, 393 S.E.2d at 160. Later in her testimony, the victim clarified that "thing" meant "[t]he thing he pees with," "front" referenced "where [she] do[es] number one," and "back" was "[w]here [she] go[es] number two." Id. at 315, 393 S.E.2d at 160. This Court held that, in light of the victim's clarification of her terminology, her testimony was sufficient evidence of penetration, enough to support the trial court's denial of the defendant's motion to dismiss. Id. at 316, 393 S.E.2d at 160 (citing State v. Fletcher, 322 N.C. 415, 423, 368 S.E.2d 633, 637 (1988)); see also State v. Bruce, 315 N.C. 273, 281, 337 S.E.2d 510, 516 (1985) (stating that a victim's testimony that the defendant penetrated her is all that is "required to permit the jury to find beyond a reasonable doubt that the penetration had in fact occurred").
While referencing anatomical drawings, J.A.B. testified about her sexual encounters with defendant as follows:
Q: Couple of last things here, [J.A.B.], and I'll be done.
Can you point out just like you did to  [J.A.B.], could you point out just like you did to Mary Curry where he put and what he put where on these illustrations.
Can you use the words that you've used before?
A: Yeah.
Q: Are you pointing over here or where are you pointing?
A: That one was there and that was also there.
Q: You're pointing at the boy whowho first; is that right?
A: Yes.
Q: And you pointed that he put it inside the whowho of the girl?
A: Yes.
MR. SMITH: Objection. Leading.
THE COURT: Overruled.
BY MR. GLASGOW
Q: He put it inside the butt of the girl?
A: Uh-huh.
J.A.B. further explained that her reference to "boy whowho" indicated defendant's penis, and, similarly, "whowho" was the term she used to describe her vagina. Finally, J.A.B. testified that defendant engaged in this conduct with her "[a] lot of times." Thus, similar to the evidence presented in Estes, J.A.B.'s direct testimony that defendant put his "boy whowho" in her "whowho" and her explanatory testimony of these terms was sufficient evidence of penetration to withstand defendant's motion to dismiss the two charges of first degree statutory rape.
Defendant, however, challenges many aspects of J.A.B.'s testimony, thus arguing that it does not adequately prove penetration. First, defendant suggests that J.A.B's testimony consisted entirely of answers to the prosecutor's leading questions. However, as defendant acknowledges, the trial court has the discretion to allow the State to use leading questions, especially "when the witness . . . has difficulty in understanding the question because of immaturity, age, infirmity or ignorance." State v. Green, 285 N.C. 482, 492, 206 S.E.2d 229, 235-36 (1974). Thus, the trial court in the present case was within its discretion to allow the prosecutor's questions, and J.A.B.'s testimony was, therefore, sufficient.
Defendant also argues that it is unclear from J.A.B's testimony if she was directly testifying as to what happened or if she was merely explaining what she told someone about the encounters. We, however, do not interpret J.A.B.'s testimony to be a mere statement of what she previously told someone about the sexual encounters. Instead, we view her testimony as a direct indication of what happened between her and defendant through the use of anatomical drawings.
Finally, defendant argues that, from J.A.B.'s testimony, it is uncertain if she was referring to penilevaginal penetration or penileanal penetration. In support of this argument, defendant relies on State v. Smith, comparing the ambiguous testimony in that case to J.A.B.'s testimony in the present case. However, Smith is distinguishable from the present case. In that case, the only evidence of fellatio was two extrajudicial statements made by the defendant, the defendant's trial testimony that "something touch[ed] his penis," the testimony that the victim and the defendant were alone in the room together, and the testimony that the defendant had a remorseful demeanor. State v. Smith, 362 N.C. 583, 594-95, 669 S.E.2d 299, 306-07 (2008) (internal quotation marks omitted). Our Supreme Court held that "something" was too vague to indicate that the victim's "lips, tongue, or mouth" touched the defendant's penis. Id. at 593-94, 669 S.E.2d at 306-07 (internal quotation marks omitted). With only the defendant's confessions to support the occurrence of fellatio, the Court held that his conviction of first degree sexual offense could not stand. Id. at 596, 669 S.E.2d at 308.
In the present case, however, J.A.B.'s testimony indicates that defendant put his penis inside her vagina, an unambiguous statement that penetration occurred. The fact that J.A.B. testified to anal penetration immediately after testifying about the vaginal penetration does not make her testimony equivocal. It is clear from the order of the questions that each question was independent of the other, and that J.A.B. answered both separately. Thus, this case is distinguishable from Smith, and we accordingly find that J.A.B.'s testimony sufficiently establishes vaginal penetration such that a jury could find that penetration in fact occurred.
Finally, we note that the State offered defendant's two extrajudicial confessions, in which he twice admitted the act of penetration, as additional evidence of vaginal intercourse. Focusing on this evidence, defendant argues that his confessions, standing alone, are insufficient proof that penetration occurred. We agree with defendant that the corpus delicti rule prohibits "the State [from relying] solely on the extrajudicial confession of a defendant to prove his or her guilt." Id. at 592, 669 S.E.2d at 305. However, as we explained above, J.A.B.'s testimony, even without considering defendant's confessions, sufficiently establishes the occurrence of penetration to withstand defendant's motion to dismiss. Thus, the State did "not rely solely on [defendant's] extrajudicial confession . . . to prove his . . . guilt." Id. Instead, it relied on independent evidence, that "when considered with the confession . . . permitt[ed] a reasonable inference that [penetration] occurred." State v. Trexler, 316 N.C. 528, 532, 342 S.E.2d 878, 880 (1986). Accordingly, the corpus delicti rule was not violated and defendant's argument to the contrary fails.

II.
Defendant next assigns plain error to the trial court's failure to instruct the jury on the lesser included offense of attempted first degree statutory rape. He argues that, because there was a conflict in the evidence surrounding the element of penetration, the jury should have been allowed to consider the offense of attempted first degree statutory rape as well as the offense of first degree statutory rape. We agree.
We first note that defendant failed to request a jury instruction on the lesser included offense of attempted first degree statutory rape. Accordingly, we must review defendant's assignment of error under the plain error standard of review. N.C.R. App. P. 10(c)(4) (current version at N.C.R. App. P. 10(a)(4) (amended Oct. 1, 2009)); see also State v. Odom, 307 N.C. 655, 6596-0, 300 S.E.2d 375, 378 (1983). To evaluate the jury instruction under this standard, we "must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." Odom, 307 N.C. at 661, 300 S.E.2d at 379. As our Supreme Court has noted, "plain error does not simply mean obvious or apparent error." Id. at 660, 300 S.E.2d at 378 (internal quotation marks omitted). Instead, under the plain error standard, "the error in the trial court's jury instructions must be so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." State v. Collins, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993) (internal quotation marks omitted). Thus, "if the evidence would permit a jury rationally to find defendant guilty of the lesser offense and acquit him of the greater," the trial court's failure to give the instruction on the lesser offense was plain error. State v. Johnson, 317 N.C. 417, 436, 347 S.E.2d 7, 18 (1986); see State v. Person, 187 N.C. App. 512, 523, 653 S.E.2d 560, 567 (2007), rev'd on other grounds, 362 N.C. 340, 663 S.E.2d 311 (2008). Yet, "when the State's evidence is clear and positive with respect to each element of the offense charged, and there is no evidence showing the commission of a lesser included offense, the trial judge may refuse to instruct the jury upon that offense." State v. Brown, 112 N.C. App. 390, 397, 436 S.E.2d 163, 168 (1993) (internal quotation marks omitted), aff'd per curium, 339 N.C. 606, 453 S.E.2d 165 (1995). "Instructions pertaining to attempted first degree rape as a lesser included offense of first degree rape are warranted when the evidence pertaining to the crucial element of penetration conflicts or when, from the evidence presented, the jury may draw conflicting inferences." Johnson, 317 N.C. at 436, 347 S.E.2d at 18.
In State v. Johnson, 317 N.C. 417, 347 S.E.2d 7 (1986), our Supreme Court was confronted with the question of whether a conflict existed as to the occurrence of penetration in spite of the victim's direct testimony that the defendant "put his penis into her vagina." Johnson, 317 N.C. at 436, 347 S.E.2d at 18. The Court found that because there was additional evidence that the victim had previously given two statements in which she explained that the defendant only attempted but was unable to accomplish penetration, there was a conflict in the evidence surrounding the act of penetration. Id.
More recently, in State v. Couser, 163 N.C. App. 727, 594 S.E.2d 420 (2004), this Court was faced with a situation similar to the one presented in Johnson. Couser, 163 N.C. App. at 733-34, 594 S.E.2d at 424-25. In that case, the victim testified at trial that the defendant had penetrated her vagina during the attack. Id. at 734, 594 S.E.2d at 425. However, other evidence indicated that the victim had previously reported to others that the defendant only attempted to rape her. Id. Additionally, the physical evidence presented at trial revealed that abrasions were only found on the opening of the victim's vagina, "which were not specific to, nor diagnostic of, sexual abuse." Id. This Court thus opined that this evidence placed "the fact of penetration in doubt," and an instruction on attempted rape was appropriate. Id.
The foregoing cases are instructive to our analysis of the present case. Here, as did the victims in Johnson and Couser, J.A.B. testified that penetration in fact occurred by stating that defendant put his "boy whowho" inside her "whowho." She also testified that she previously gave the forensic interviewer, Mary Curry ("Ms. Curry"), this same statement. However, Ms. Curry stated at trial that J.A.B. previously reported to her that defendant only "placed his penis on her . . . vagina, her butt, and. . . her chest." Though "the entering of the vulva or labia is sufficient" to establish penetration, State v. Murry, 277 N.C. 197, 203, 176 S.E.2d 738, 742 (1970), stating that defendant put his penis "on" her vagina does not adequately indicate that his penis entered any part of her vagina. According to this evidence, it appears that J.A.B. gave a statement prior to trial in which she stated that defendant did not actually accomplish the act of penetration. Because this statement appears to have been admitted for substantive purposes and is in conflict with her trial testimony as to the occurrence of penetration, an instruction on attempted first degree statutory rape was required.
Moreover, the medical evidence presented in the present case shows that J.A.B.'s physical exam revealed "no signs of acute injury or healed trauma." Though, as the State argues, "[m]erely presenting evidence that no trauma occurred to [the victim] is not sufficient to establish a conflict of evidence as to penetration," State v. Thomas, 187 N.C. App. 140, 146, 651 S.E.2d 924, 928 (2007), this physical evidence combined with the testimony of Ms. Curry concerning J.A.B.'s previous statement creates a conflict in the evidence surrounding the act of penetration such that the jury could formulate differing conclusions.
The State, relying on State v. Williams, 314 N.C. 337, 333 S.E.2d 708 (1985) and State v. Person, 187 N.C. App. 512, 653 S.E.2d 560 (2007), rev' on other grounds, 362 N.C. 340, 663 S.E.2d 311 (2008), argues that defendant did not unequivocally deny penetration in his trial testimony; thus, a charge of attempted first degree statutory rape is not necessary. We disagree.
In Williams, the State presented evidence of the defendant's prior statement in which he indicated that he "struggled to penetrate without an erection." 314 N.C. at 351, 333 S.E.2d at 718. Our Supreme Court opined that there was no conflict between the defendant's statement and the victim's unequivocal testimony that penetration occurred because struggling to penetrate "in no way negates a completed act." Id. at 352, 333 S.E.2d at 718. Similarly, in Person, the defendant testified that he could not remember if penetration occurred. 187 N.C. App. at 525 n.2, 653 S.E.2d at 568 n.2. There, this Court reasoned that the defendant's testimony in that context did not equate to a denial of penetration. Id. Accordingly, this Court held that with the combination of the defendant's testimony, the victim's testimony that did not specifically exclude penetration, and the DNA evidence that unequivocally indicated penetration, there was no conflict in the evidence surrounding penetration. Id. at 525, 653 S.E.2d at 568.
In the present case, defendant testified that, at the time of his confession to the police, he "thought . . . [he] had sexual intercourse with [J.A.B.]" but that he actually "didn't remember if [he] went in or not which [he] d[id]n't believe [he] did anyway." He further explained that "[i]t was mainly smooth but other than that [he] couldn't even tell." Comparing defendant's testimony to that of the defendants in Williams and Person, we agree that defendant's testimony does not equate to a denial of penetration. However, we do not agree that, in the context of the present case, this alone relieves the trial court of its duty to instruct the jury on the offense of attempted first degree statutory rape. We again stress that the additional evidence of J.A.B.'s prior statement presented in this case, which was not present in either Williams or Person, presents a conflict in the evidence surrounding the element of penetration such that a rational jury could conclude that defendant did not in fact penetrate J.A.B. As a result, a jury could rationally find defendant guilty of only attempted first degree statutory rape and acquit him of the first degree statutory rape charges. Thus, the evidence presented is sufficient to require that the jury be instructed on attempted first degree statutory rape, and the trial court's failure to give such an instruction amounts to plain error. Accordingly, we remand this case to the trial court for a new trial on the two charges of first degree statutory rape consistent with this opinion.

III.
Finally, defendant argues that the trial court's order requiring him to submit to lifetime satellitebased monitoring is not supported by the evidence and is therefore in error. We agree.
In evaluating the trial court's decision to impose satellitebased monitoring, "we review the trial court's findings of fact to determine whether they are supported by competent record evidence, and we review the trial court's conclusions of law for legal accuracy and to ensure that those conclusions reflect a correct application of law to the facts found." State v. Kilby, __ N.C. App. __, __, 679 S.E.2d 430, 432 (2009) (internal quotation marks omitted). In ascertaining whether to impose the requirement of satellitebased monitoring, the trial court must first "determine whether the offender's conviction places the offender in one of the categories described in G.S. 14-208.40(a), and if so, shall make a finding of fact of that determination." N.C. Gen. Stat. § 14-208.40A(b) (2007). Under N.C.G.S. § 14-208.40(a), as it appeared at the time of defendant's conviction, a defendant may be required to submit to satellitebased monitoring if he or she:
(1) . . . is convicted of a reportable conviction as defined by G.S. 14-208.6(4) and. . . is required to register under Part 3 of Article 27A of Chapter 14 of the General Statutes because [he or she] is classified as a sexually violent predator, is a recidivist, or was convicted of an aggravated offense as those terms are defined in G.S. 14-208.6 [or]
(2) . . . satisfies all of the following criteria: (i) is convicted of a reportable conviction as defined by G.S. 14-208.6(4), (ii) is required to register under Part 2 of Article 27A of Chapter 14 of the General Statutes, (iii) has committed an offense involving the physical, mental, or sexual abuse of a minor, and (iv) based on the Department's risk assessment program requires the highest possible level of supervision and monitoring.
N.C. Gen. Stat. § 14-208.40(a) (2007). If the defendant does not fit within either of these categories, satellitebased monitoring is improper. See id. ("The [sex offender monitoring] program shall be designed to monitor [the following] two categories of offenders. . . .").
In the present case, the trial court sentenced defendant to lifetime satellitebased monitoring based on its findings that "defendant is classified as a sexually violent predator, is a recidivist, or was convicted of an aggravated offense as those terms are defined in G.S. 14-208.6." The trial court appears to have classified defendant as an offender within the first category set forth in N.C.G.S. § 14-208.40(a). However, defendant contends, and the State agrees, that there is no evidence in the record to support any of these findings. A careful review of the record reveals that defendant was not a recidivist, as he was sentenced at a prior record level I. See N.C. Gen. Stat. § 14-208.6(2b) (2007) (defining a recidivist as "a person who has a prior conviction for an offense that is described in G.S. 14-208.6(4)"). Likewise, the record indicates that defendant was not convicted of an aggravated offense because there is no evidence that J.A.B. was under the age of twelve or that defendant committed the offense "through the use of force or the threat of serious violence." N.C. Gen. Stat. § 14-208.6(1a) (2007). Moreover, the Board of Experts that conducted defendant's Sexually Violent Predator Evaluation clearly concluded that defendant did not meet the criteria for classification as a sexually violent predator. Accordingly, we must agree that there is no evidence to support the trial court's order requiring defendant to submit to lifetime satellitebased monitoring.
Moreover, there is no evidence in the record before this Court to support a finding that defendant is an offender as described in the second category set forth in N.C.G.S. § 14-208.40(a). Specifically, there is no evidence that defendant "requires the highest possible level of supervision and monitoring." N.C. Gen. Stat. § 14-208.40(a)(2) (2007). In fact, the evidence shows that defendant was only in the "moderate low range" for risk of sexual recidivism. See State v. Kilby, __ N.C. App. __, __, 679 S.E.2d 430, 434 (2009) (internal quotation marks omitted) (reversing the trial court's order imposing satellitebased monitoring based on the DOC's assessment that the defendant was a "moderate" risk because this assessment did not support the finding that defendant required "the highest possible level of supervision and monitoring" absent additional evidence that defendant posed a greater risk). Thus, defendant should not have been subject to any form of satellitebased monitoring for either the first degree statutory rape convictions or the taking indecent liberties with a child convictions.
Defendant has not brought forward any of his assignments of error with respect to his convictions of taking indecent liberties with a child. Accordingly, the assignments of error are deemed abandoned, N.C.R. App. P. 28(b)(6) (amended Oct. 1, 2009), and we find no error in defendant's convictions of taking indecent liberties with a minor.
07CRS054972 First Degree Rape-New Trial
07CRS054972 Taking Indecent Liberties with a Child-No Error
07CRS054972 Order for Lifetime SatelliteBased Monitoring-Vacated
07CRS054973 First Degree Rape-New Trial
07CRS054973 Taking Indecent Liberties with a child-No Error
Judges JACKSON and ERVIN concur.
Report per Rule 30(e).