STATE OF NORTH CAROLINA v. JOSHUA DAVID SMITH

No. 234A08

(Filed 12 December 2008)

### 1. Confessions and Incriminating Statements—extrajudicial confession—corpus delicti rule—first-degree sexual offense

The Court of Appeals did not err by reversing defendant's conviction for first-degree sexual offense based on insufficient evidence under the *corpus delicti* rule to corroborate defendant's extrajudicial confession when the victim twice denied that a first-degree sexual offense ever occurred, because none of the State's evidence was trustworthy to establish the sexual act element of a first-degree sexual offense (that the victim's lips, tongue, or mouth ever touched defendant's penis) when: (1) although the State argued defendant's trial testimony strongly corroborated the essential facts and circumstances surrounding the first-degree sexual offense, the pertinent statements were vague; (2) even if the victim's brother reported defendant's statements honestly and accurately, it cannot be said that the evidence was independent from defendant's extrajudicial confession, and defendant's statements were more of a report of a meeting with an officer rather than an actual confession; (3) it could not be rationalized that defendant's demeanor and alleged confession to the victim's brother, minutes after defendant's extrajudicial confession, was of the caliber to qualify as the strong, substantial, independent corroboration evidence required by *Parker,* 315 N.C. 222; and (4) the opportunity evidence submitted by the State was not strong enough when no independent proof, such as physical evidence or witness testimony, of any crime could be shown.

### 2. Indecent Liberties— instruction—plain error analysis

The Court of Appeals erred by concluding the trial court's indecent liberties instructions constituted plain error, because:

**STATE v. SMITH**

[362 N.C. 583 (2008)]

(1) the jury received the verbatim instructions on indecent liberties taken from the North Carolina Pattern Jury Instructions; (2) there was strong corroborating evidence to establish the trustworthiness of defendant's extrajudicial confession as to the indecent liberties charge; and (3) it was immaterial that the trial court did not give specific instructions as to which of those acts were at issue when the jury could have found that defendant's acts during the first or second visit constituted an indecent liberty with a child.

### 3. Appeal and Error— remand—consideration of remaining assignments of error

Our Supreme Court remanded this first-degree sexual offense and indecent liberties case to the Court of Appeals for consideration of defendant's remaining assignments of error as they relate to the indecent liberties conviction. If, after reviewing defendant's remaining assignments of error the Court of Appeals finds no error, the case should be further remanded to the Superior Court for resentencing as to the indecent liberties conviction.

Justice TIMMONS-GOODSON concurring in result only.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 190 N.C. App. 44, 660 S.E.2d 82 (2008), reversing a judgment entered 27 July 2006 by Judge Linwood O. Foust in Superior Court, Cleveland County and remanding for a new trial on the charges of indecent liberties with a child. Heard in the Supreme Court 11 September 2008.

*Roy Cooper, Attorney General, by Chris Z. Sinha, Assistant Attorney General, for the State-appellant.*

*McCotter, Ashton & Smith, P.A., by Rudolph A. Ashton, III and Kirby H. Smith, III, for defendant-appellee.*

BRADY, Justice.

Defendant Joshua David Smith was tried for first-degree rape, first-degree sexual offense, and one count of indecent liberties with a child. The jury acquitted defendant of first-degree rape, but convicted him of first-degree sexual offense, a Class B1 felony, and indecent liberties with a child, a Class F felony. The trial court consolidated the offenses for purposes of sentencing, and sentenced defendant to an active term of imprisonment for 196 months to 245 months in the

**STATE v. SMITH**

[362 N.C. 583 (2008)]

North Carolina Department of Correction. Defendant appealed his convictions to the Court of Appeals, which, in a divided opinion, reversed his first-degree sexual offense conviction and granted a new trial on the indecent liberties charge. The State has appealed two issues as of right on the basis of the dissent in the Court of Appeals.

First, we must consider whether there was substantial corroborating evidence independent of defendant's extrajudicial confession sufficient to sustain his conviction for first-degree sexual offense. We hold that under the *corpus delicti* rule, there was not substantial independent evidence to corroborate the extrajudicial confession sufficient to sustain the conviction for first-degree sexual offense. Second, we must determine whether the trial court's jury instructions regarding the indecent liberties charge created confusion constituting plain error. We hold that the trial court did not err in its indecent liberties instructions. Accordingly, we affirm in part, reverse in part, and remand the case to the Court of Appeals to consider defendant's remaining assignments of error.

## PROCEDURAL AND FACTUAL BACKGROUND

On 14 April 2003, the Cleveland County Grand Jury returned indictments charging defendant with first-degree rape, first-degree sexual offense, and one count of indecent liberties with a child. Following a four-day jury trial in July 2006, defendant was found not guilty of first-degree rape, but guilty of first-degree sexual offense and indecent liberties with a child. Defendant appealed to the Court of Appeals, where a majority of the court reversed his conviction for first-degree sexual offense and remanded the charge of indecent liberties with a child to the trial court for a new trial. The case is before us on the basis of the dissent at the Court of Appeals.

The evidence presented at trial tended to show that in December 2002, K.L.C., the victim, was twelve years old and lived in Lawndale, North Carolina with her mother, grandmother, and nineteen-year-old brother, Jonathan. Defendant, who was then twenty-one years old, also resided in Lawndale with his girlfriend Cassie and their three-month-old daughter. The couple and Jonathan were friends. Through this friendship, K.L.C. became acquainted with Cassie. Before Christmas 2002, K.L.C. had only briefly met defendant on a single occasion.

Around the Christmas holiday, defendant and Cassie visited Jonathan and K.L.C.'s residence on two consecutive evenings (the

first visit and the second visit).[1] During the first visit, defendant, Jonathan, Cassie, and Jonathan's fifteen-year-old neighbor consumed alcohol defendant had purchased for the party. Jonathan and his neighbor also smoked marijuana. K.L.C. was present during this party, but was not drinking or smoking. At some point late in the evening, Cassie and Jonathan left the residence, leaving K.L.C. to watch the extremely intoxicated defendant.

K.L.C. testified that while Jonathan and Cassie were away, she and defendant were alone in Jonathan's bedroom. She asserted that although defendant made inappropriate comments to her, no sexual contact occurred. Defendant testified that after Jonathan and Cassie left, he passed out in a drunken stupor on Jonathan's bed, and later awakened to find K.L.C. between his legs, attempting to fellate him. Defendant testified he immediately pushed her away. From this testimony it is unclear if K.L.C.'s mouth ever made contact with defendant's penis.

The next evening, another party was held at Jonathan and K.L.C.'s residence. During this second visit, Cassie and defendant brought their three-month-old daughter. The alcohol and marijuana use continued; however, it is disputed in the record as to whether the defendant was drinking. As the evening progressed, defendant and Cassie decided to spend the night at Jonathan and K.L.C.'s residence but realized they would need more diapers and formula for their infant. The group decided defendant would leave with the infant to get the diapers and formula and that K.L.C. would accompany him.[2]

Defendant and K.L.C. traveled approximately two miles to defendant's residence. K.L.C. testified that once there, she followed defendant inside, carrying the infant in a car seat. She placed the car seat on the floor and then asked where the restroom was located. After defendant pointed to his bedroom, she proceeded to the restroom and defendant followed her. K.L.C. testified that once they were in the bedroom defendant grabbed her shoulders from behind, threw her on the bed, removed her clothing, undressed himself, and then inserted his penis into her vagina. K.L.C. testified that despite

1. The dates of the visits are in dispute. K.L.C. testified that defendant visited her residence on 25 and 26 December 2002; defendant testified that the visits occurred on 26 and 27 December 2002.

2. K.L.C. testified that Jonathan made her go with defendant on this trip because Jonathan wished to be alone with Cassie. Jonathan and K.L.C. both testified during trial that Jonathan and Cassie were having an affair. Jonathan testified that K.L.C. decided to go with defendant to help take care of the baby.

her efforts to halt defendant, she was unable to stop the rape until her brother Jonathan telephoned the residence and left a message on defendant's answering machine.[3] After this telephone call, defendant took K.L.C. and the infant back to K.L.C. and Jonathan's residence. At trial, Jonathan testified that he thought K.L.C. and defendant were gone for at least forty-five minutes.

Conversely, defendant testified that no sexual encounter of any kind occurred while K.L.C. and he were on their errand. Defendant stated that once they arrived at his residence, he told K.L.C. to stay in the truck with the infant. When he went inside to get the formula and diapers, K.L.C. came in with the infant and sat on the couch in the living room. Next, defendant went to the restroom, with the door closed, and during this time Jonathan telephoned and left a message on his answering machine. After using the restroom, defendant telephoned Jonathan's residence and told Cassie that K.L.C., the infant, and he were about to leave to return to Jonathan and K.L.C.'s residence. Defendant said he then prepared a bottle for the infant and all three left his residence. Defendant estimated that he and K.L.C. were in his residence together for five minutes.

K.L.C. told her sister Amanda about the alleged rape a week later. Amanda informed K.L.C.'s mother, who then notified law enforcement. Detective Debbie Arrowood of the Cleveland County Sheriff's Department investigated the report. On the morning of 28 January 2003, Detective Arrowood questioned defendant after he voluntarily arranged a meeting with her. Defendant told Detective Arrowood that he never had any sexual contact with K.L.C. Defendant then left her office, but he voluntarily returned in the afternoon to speak with her again. Detective Arrowood testified that during the second interrogation defendant made an extrajudicial confession. She testified that

Joshua stated . . . he was at [K.L.C.]'s house a couple of days before [the second visit] and he had been drinking. Joshua stated he was in Jonathan's bedroom, who is [K.L.C.]'s brother, and he was lying on the bed. Joshua stated [K.L.C.] came in the room and was coming on to him. Joshua told me that [K.L.C.] took her pants off, [and] laid down beside him on the bed. Joshua stated [K.L.C.] wanted him to do oral sex on her, but he wouldn't do it. Joshua stated [K.L.C.] unzipped his pants, took out his penis, and tried to give him a blow job. Joshua stated that he couldn't get it up because he had been drinking, so [K.L.C.] stopped.

---

3. Jonathan testified that he telephoned because he thought defendant and K.L.C. had been gone too long, and he was worried about his sister.

STATE v. SMITH

[362 N.C. 583 (2008)]

Detective Arrowood also testified that defendant admitted, " 'Yes, it was a stupid mistake and it has ruined my life.' "

The State also presented evidence that defendant made a statement to Jonathan that he received fellatio from K.L.C. Jonathan testified that he traveled with defendant to Detective Arrowood's office and waited while defendant spoke with the detective. Jonathan stated that immediately after defendant came out of the office he appeared upset and admitted to accepting fellatio from K.L.C. Jonathan testified that defendant was apologetic.

At trial, defendant testified that during his interview with Detective Arrowood he was untruthful when he told her about K.L.C. lying on the bed with him and asking for cunnilingus. He also denied making any statement to Jonathan that he let K.L.C. attempt to give him fellatio or that he wanted her to do so.

Detective Arrowood also testified to interviewing K.L.C. about the alleged rape. K.L.C. described the alleged rape, but during her interview and at trial, K.L.C. stated that prior to the alleged rape no sexual or indecent acts occurred between her and defendant. She also stated that no sexual contact between her and defendant occurred after the alleged rape.

## ANALYSIS

Two issues have been presented to this Court on appeal. First, we must decide if, under the *corpus delicti* rule, there was substantial evidence independent of defendant's extrajudicial confession sufficient to sustain his conviction for first-degree sexual offense. Next, we must determine if the jury instructions on the charge of indecent liberties with a child constituted plain error.

## I.  Sufficiency of the Evidence Under the *Corpus Delicti* Rule

[1] Defendant argues there was not sufficient evidence under the *corpus delicti* rule to sustain his conviction for first-degree sexual offense. Under the *corpus delicti* rule, the State may not rely solely on the extrajudicial confession of a defendant, but must produce substantial independent corroborative evidence that supports the facts underlying the confession. *State v. Parker*, 315 N.C. 222, 337 S.E.2d 487 (1985). Before applying this complex rule to the instant case it is necessary to recite a brief history of how the *corpus delicti* rule developed and understand its current application in North Carolina law.

## A. Historical Background of the *Corpus Delicti* Rule

Throughout history, law-based societies have placed a high premium on ensuring that substantial proof of a crime exists before imposing punishment on a defendant. For instance, *Hammurabi's Code of Laws*, which is thought to date back to circa 2250 B.C., required one accusing another of a capital offense to prove his case or else be put to death. *See* Robert Francis Harper, *The Code of Hammurabi King of Babylon about 2250 B.C.* § 1 (2d ed. 1904). Elsewhere in the *Code*, witnesses are required to attest to contracts and report the contents truthfully if a dispute arises, or else face harsh legal punishment. *Id.* at §§ 11-15. Similarly, the *Torah*, an ancient bases for Judeo-Christian law, instructed on the testimony of witnesses. As Moses approached death, he reminded the Israelites of their unique history and relayed rules that comprised Israel's duties under the Mosaic covenant. *See Deuteronomy* 4:44-32:47. In doing so, Moses instructed Israel to seek justice to protect against false witnesses. Therefore, he instructed that "[a] matter must be established by the testimony of two or three witnesses." *Deuteronomy* 19:15 (NIV). The *Koran* contains similar instructions. Generally, at least four witnesses are required to testify before a woman can be punished for adultery under Islamic law. *Koran* 24:2-12. These basic concepts can also be traced to the Middle Ages. For instance, in the late twelfth century, accusatory proceedings required an accuser to present *plena probatio*, or "full proof" of his charges. James A. Brundage, *Medieval Canon Law* 142-43 (1995). *Plena probatio* was established if two credible eyewitnesses could attest to the defendant's commission of the crime charged. *Id.*

Modern societies have also developed legal rules to help ensure that defendants are only punished for crimes they have actually committed. To establish guilt in any criminal case, it is the duty of the State to show that "(a) the injury or harm constituting the crime occurred; (b) this injury or harm was done in a criminal manner; and (c) the defendant was the person who inflicted the injury or harm." 1 Kenneth S. Broun et al., *McCormick on Evidence* § 147 at 600 (6th ed. 2006)[hereinafter 1 *McCormick on Evidence*]. It is generally acknowledged that the *corpus delicti* rule was developed to address the first two duties of the prosecuting authority. *Id.*

The term *corpus delicti* literally means "body of the crime." Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* at 140 (3d ed. 1982)[hereinafter *Criminal Law*]. Legally, the *corpus delicti* of an offense refers to the "fact of the specific loss or injury sustained": in

homicide, the dead body; in larceny, the missing property; and in arson, the burnt residence. 7 John Henry Wigmore, *Evidence in Trials at Common Law* § 2072, at 524 (James J. Chadbourn rev., Little, Brown & Co. 1978)[hereinafter 7 *Wigmore on Evidence*](emphasis omitted). The *corpus delicti* rule establishes that "no criminal conviction can be based upon defendant's extrajudicial confession or admission, although otherwise admissible, unless there is other evidence tending to establish the corpus delicti." *Criminal Law* at 142 (emphasis omitted).

## The *Corpus Delicti Rule in England*

Legal scholars trace the modern concept of *corpus delicti* to several seventeenth century English cases; the most notable among them is *Perry's Case. Id.* at 142-43. *Perry's Case* involved a defendant who confessed to the murder of a missing English man. 14 T.B. Howell, *A Complete Collection of State Trials* 1313-24 (London, T.C. Hansard 1816). In his confession, the defendant implicated both his mother and brother in the homicide. *Id.* at 1313-19. All three were executed before the alleged victim was discovered *alive* years later. *Id.* at 1319-22. The public shock and horror resulting from this case and others with similar circumstances spurred the beginnings of the *corpus delicti* rule. *Criminal Law* at 142. Subsequent English courts failed to specifically define the rule or its scope, but versions of the law can be seen in English statutes dating back to the second half of the eighteenth century. One such statute, documented in William Blackstone's *Commentaries on the Laws of England,* requires that a defendant's confession to any treason against the Crown be made in *open court* in order to convict. 4 William Blackstone, *Commentaries* 350 (Oxford, Clarendon Press 1769). Absent such public confession, at least two witnesses were required to testify against the defendant. *Id.* Several similar statutes emerged in the English courts, but no clear doctrine developed, which left the law in "an unfortunate state of obscurity, subject to much difference of opinion." *7 Wigmore on Evidence* § 2070, at 509.

## The *Corpus Delicti* Rule in America

Since no definitive rule emanated from the English courts, American courts were free to adopt versions of the *corpus delicti* rule that were most fitting to the needs of the time. *Id.* § 2071, at 511. American jurisprudence has consistently valued witness testimony, as evidenced by the United States Constitution. Article III establishes that a conviction for treason must be supported by "the testimony of

STATE v. SMITH

[362 N.C. 583 (2008)]

two witnesses to the same overt act, or on confession in open court." U.S. Const. art. III, § 3. Additionally, the Confrontation Clause provides the accused the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. It is believed that these provisions were written at least partly in response to the infamous seventeenth century trial of Sir Walter Raleigh, in which Raleigh was convicted based on the out of court confession of Lord Cobham, who named Raleigh as his accomplice in a conspiracy to overthrow the King of England. Stanley A. Goldman, *Guilt by Intuition: The Insufficiency of Prior Inconsistent Statements to Convict*, 65 N.C. L. Rev. 1, 30 (1986). Some suggest that Cobham's confession was elicited by torture. *Id.* In any event, Raleigh was denied the right to confront Cobham in open court. *Id.* In addition to Article III, Section 3 and the Confrontation Clause, the *corpus delicti* rule was seen by the American courts as further protection for defendants from dubious extrajudicial confessions. 1 *McCormick on Evidence* § 145, at 595-96.

Instances of false confessions also spurred the legal development of the rule. The most famous of these involved two brothers from Massachusetts, Stephen and Jesse Bourne. Edwin M. Borchard, *Convicting the Innocent* 15-22 (1932). Years after the disappearance of their brother-in-law, the two were accused of his murder. *Id.* at 18. Jesse blamed his brother Stephen for the murder, and eventually Stephen confessed to killing his brother-in-law. *Id.* at 16-18. Stephen later retracted the confession and professed his innocence, but he was still convicted and sentenced to death. *Id.* at 18. However, before Stephen was executed, the allegedly murdered brother-in-law appeared, alive and well, and Stephen was released. *Id.* at 19-20. This case, as well as others like it, cast a shadow of doubt on the reliability of extrajudicial confessions. *Criminal Law* at 143. As a result, different versions of the *corpus delicti* rule were adopted throughout the country. Now, all American jurisdictions follow some version of the *corpus delicti* rule. 1 *McCormick on Evidence* § 145, at 592.

Historically, the legal justifications supporting the *corpus delicti* rule have been threefold: First, the rule protects against those shocking situations in which alleged murder victims turn up alive after their accused killer has been convicted and perhaps executed. *Parker*, 315 N.C. at 233, 337 S.E.2d at 493 (citing Julian S. Millstein, Note, *Confession Corroboration in New York: A Replacement for the* Corpus Delicti *Rule*, 46 Fordham L. Rev. 1205, 1205 (1978) [hereinafter Note, *Confession Corroboration*](citation omitted)). Second,

the rule ensures that confessions that are " 'erroneously reported or construed . . . , involuntarily made . . . , mistaken as to law or fact, or falsely volunteered by an insane or mentally disturbed individual' " cannot be used to falsely convict a defendant. *Id.* (quoting Note, *Confession Corroboration* at 1205). Finally, the rule is thought to promote good law enforcement practices because it requires thorough investigations of alleged crimes to ensure that justice is achieved and the innocent are vindicated. *Id.* (citing Note, *Confession Corroboration* at 1205).

## B.  North Carolina's *Corpus Delicti* Corroboration Evidence Standard

It has long been established in North Carolina that the State may not rely solely on the extrajudicial confession of a defendant to prove his or her guilt; other corroborating evidence is needed to convict for a criminal offense. *See State v. Long,* 2 N.C. 360, 360, 2 N.C. 455, 456, 1 Hayw. 455 (1797) (per curiam). "[A] naked confession, unattended with circumstances, is not sufficient. A confession, from the very nature of the thing is a very doubtful species of evidence, and to be received with great caution. . . . [If] there are no confirmatory circumstances . . . it is better to acquit the prisoner." *Id.* While it has been universally understood that other corroboration evidence must accompany the extrajudicial confession, the quantum and quality of this corroboration evidence have been debated through the years. As a result, corroboration evidence standards vary from state to state. In *Parker,* North Carolina joined the national trend expanding the *corpus delicti* rule to allow a defendant's extrajudicial confession to sustain a conviction when the trustworthiness of the confession is substantiated by *evidence aliunde.* 315 N.C. 222, 337 S.E.2d 487. *Parker* held that in noncapital cases, a conviction can stand if "the accused's confession is supported by substantial independent evidence tending to establish its trustworthiness, including facts that tend to show the defendant had the opportunity to commit the crime." *Id.* at 236, 337 S.E.2d at 495. Furthermore, *Parker* emphasizes "that when independent proof of loss or injury is lacking, there must be *strong* corroboration of *essential* facts and circumstances embraced in the defendant's confession." *Id.*

## C.  Application of the *Corpus Delicti* Rule to the First-degree Sexual Offense Conviction

A defendant is guilty of first-degree sexual offense if the State proves, beyond a reasonable doubt, that (1) the defendant engaged in

a sexual act with a victim who is under the age of thirteen, and (2) the defendant is at least twelve years old and at least four years older than the victim. *See* N.C.G.S. § 14-27.4 (2007). A sexual act, as defined by statute, means "cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body . . . ." *Id.* § 14-27.1(4) (2007). Fellatio is defined as "any touching of the male sexual organ by the lips, tongue, or mouth of another person." *See, e.g., State v. Johnson,* 105 N.C. App. 390, 393, 413 S.E.2d 562, 564, *appeal dismissed and disc. rev. denied,* 332 N.C. 348, 421 S.E.2d 158 (1992); *see also* 1 N.C.P.I.—Crim. 207.45.1 (2008).

In the instant case, a critical fact exists that necessarily bears upon our analysis: the victim twice denied that a first-degree sexual offense ever occurred. When interviewed by Detective Arrowood six weeks after the alleged events transpired, K.L.C. stated that there was no sexual contact between defendant and her on the night of the first visit. Additionally, K.L.C. testified at trial that during the first visit, she was alone with defendant in Jonathan's bedroom, and while defendant made inappropriate comments to her, no sexual contact occurred on the night of the first visit. A victim of sexual violence, especially a minor victim, is not required to testify to the sexual offense in order for a conviction to stand. *See State v. Cooke,* 318 N.C. 674, 679, 351 S.E.2d 290, 292 (1987) (stating that "there is no requirement that the victim testify before the accused may be convicted"). However, in this unique situation, in which the victim explicitly denies that the offense ever occurred, we believe it is imperative to adhere to *Parker's* emphasis that "strong" corroboration evidence supporting defendant's extrajudicial confession must be shown when proof of injury or loss is otherwise lacking. 315 N.C. at 236, 337 S.E.2d at 495.

The State argues that under the *corpus delicti* rule, defendant's extrajudicial confession, along with several pieces of corroborative evidence, is sufficient to sustain a conviction for first-degree sexual offense. However, none of the State's evidence is trustworthy to establish the sexual act element of a first-degree sexual offense, that K.L.C.'s lips, tongue, or mouth ever touched defendant's penis. In the extrajudicial confession, defendant stated to Detective Arrowood that K.L.C. unzipped his pants, removed his penis, and *attempted* fellatio, but that he could not achieve an erection because of his alcohol consumption. From this confession alone a jury could not determine

beyond a reasonable doubt that K.L.C.'s mouth ever made contact with defendant's penis, which is a required element in a sexual offense prosecution.

The State relies on three types of corroborative evidence to sustain the extrajudicial confession. First, the State argues defendant's trial testimony strongly corroborates the essential facts and circumstances surrounding the first-degree sexual offense. At trial, defendant stated that on the evening of the first visit, K.L.C. was between his legs and he felt *something* touch his penis. Like the extrajudicial confession, this statement is also vague; it is not clear from the record what this "something" was. This testimony is insufficient to strongly corroborate the essential facts and circumstances of a "sexual act" necessary to convict defendant of a first-degree sexual offense.

Next, the State argues that evidence of defendant's statements to Jonathan made immediately following the extrajudicial confession to Detective Arrowood, along with Jonathan's testimony about defendant's demeanor at the time, strongly corroborates the extrajudicial confession. Jonathan testified that defendant allegedly confessed that "he had let [K.L.C.] give him oral sex." This testimony is not sufficient to corroborate defendant's extrajudicial confession under the *corpus delicti* rule because defendant's alleged statements are not *independent* from the extrajudicial confession. Jonathan testified that on 28 January 2003, he accompanied defendant to the police station and waited for him while he met with Detective Arrowood. During the meeting, defendant made his extrajudicial confession. Jonathan testified that immediately after the meeting, defendant "was upset when he came out of Ms. Arrowood's office." Jonathan further testified that after asking defendant what happened in the office, defendant "admitted to having oral sex with [K.L.C.]." At trial, defendant denied ever making these statements to Jonathan.

*Parker* requires that the corroborating evidence supporting defendant's extrajudicial confession be substantial and *independent*. 315 N.C. at 236, 337 S.E.2d at 495. Even if Jonathan reported defendant's statements honestly and accurately, we cannot say the evidence is independent from defendant's extrajudicial confession. Jonathan testified that the statements were made *immediately* following defendant's meeting with Detective Arrowood. Furthermore, the statements were elicited after Jonathan asked defendant about what happened in the meeting. In this respect, defendant's statements are more of a report of the meeting than an actual "confession." Therefore, because these statements were

derived from the extrajudicial confession given to Detective Arrowood just minutes before, they have no more probative value than the extrajudicial confession itself.

Jonathan's testimony describing defendant's demeanor also fails to meet *Parker's* strong corroboration standard. While Jonathan did testify that defendant told him that "he was sorry, that it wasn't right, but it still don't change the fact" after the interview, these statements are neither substantial, independent, nor strong because defendant allegedly made them in the same mental condition and under the same stress of the interrogation with Detective Arrowood. If the extrajudicial confession is suspect under the *corpus delicti* rule and cannot stand alone to convict defendant, then we cannot rationalize that defendant's demeanor and alleged confession to Jonathan, minutes after his extrajudicial confession, is of the caliber to qualify as the strong, substantial, independent corroboration evidence *Parker* requires.

The State last contends that under *Parker*, several pieces of "opportunity evidence" are sufficient to sustain defendant's conviction for first-degree sexual offense. The State offers testimony from both defendant and K.L.C. that they were alone together in Jonathan's bedroom during the first visit, as well as Jonathan's testimony that he left K.L.C. with defendant during the first visit.

In *Parker*, this Court held that facts tending to show the defendant had the opportunity to commit the crime can be considered as independent evidence to establish the trustworthiness of the defendant's confession. 315 N.C. at 236-39, 337 S.E.2d at 495-97. However, the opportunity evidence in *Parker* differs from the case at bar. In *Parker*, the defendant was charged with armed robbery and first-degree murder of two victims. *Id.* at 224, 337 S.E.2d at 488. The State was able to produce significant independent evidence of both murders and of armed robbery, including the bodies of both victims and the recovered property stolen from the first victim. *Id.* at 224-25, 337 S.E.2d at 488-89. However, no evidence of the second armed robbery could be shown, other than the defendant's extrajudicial confession. *Id.* at 227, 337 S.E.2d at 490. This Court ruled that evidence showing the defendant had the opportunity to commit the crime was sufficient under the *corpus delicti* rule to sustain the second armed robbery conviction in light of the "overwhelming amount and convincing nature of the corroborative evidence . . . of more serious crimes committed against [both] victim[s] . . . at the time of the robbery." *Id.* at 237-38, 337 S.E.2d at 496. The present case differs from *Parker*

STATE v. SMITH

[362 N.C. 583 (2008)]

because no independent proof, such as physical evidence or witness testimony, of any crime can be shown. Furthermore, in the case at bar, K.L.C., an alleged *living* victim, gave two statements averring that the sexual offense did not occur. In light of these facts, the opportunity evidence submitted by the State is not strong enough to establish the *corpus delicti* of first-degree sexual offense under *Parker*, namely, that a "sexual act" occurred between defendant and K.L.C.[4]

Because the State has not met its burden to provide strong corroboration evidence relevant to the essential facts and circumstances of defendant's extrajudicial confession, the *corpus delicti* of the first-degree sexual offense charge has not been established, and the conviction cannot be sustained.

## II. Jury Instructions on Indecent Liberties with a Child

[2] Defendant asserts that the jury instructions regarding indecent liberties with a child were confusing and misleading in that the trial court failed to specify the acts underlying the indecent liberties charge. Because defendant failed to object to the instructions at trial, we consider only whether the trial court committed plain error. *See* N.C. R. App. P. 10(c)(4).

"A reversal for plain error is only appropriate in the most exceptional cases." *State v. Duke*, 360 N.C. 110, 138, 623 S.E.2d 11, 29 (2005), *cert. denied*, —— U.S. ——, 127 S. Ct. 130, 166 L. Ed. 2d 96 (2006). Plain error analysis should be applied cautiously and only when "after reviewing the entire record, it can be said the claimed error is a '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.' " *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.) (citation omitted), *cert. denied*, 459 U.S. 1018 (1982)). An appellate court "must be convinced that absent the error the jury probably would have reached a different verdict." *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986) (citing *Odom*, 397 N.C. at 661, 300 S.E.2d at 378-79).

The jury received the verbatim instructions on indecent liberties taken from the North Carolina Pattern Jury Instructions. *See* 2 N.C.P.I.—Crim. 226.85 (2008). When instructing on indecent liberties, the judge is under no requirement to specifically identify the acts that

4. Nothing in K.L.C.'s testimony regarding the alleged rape established the elements of a sexual-offense.

constitute the charge. *See State v. Hartness*, 326 N.C. 561, 563-67, 391 S.E.2d 177, 178-81 (1990). In *State v. Lawrence*, this Court stated, "a defendant may be unanimously convicted of indecent liberties even if: (1) the jurors considered a higher number of incidents of immoral or indecent behavior than the number of counts charged, and (2) the indictments lacked specific details to identify the specific incidents." 360 N.C. 368, 375 627 S.E.2d 609, 613 (2006) (citing *Hartness* and *State v. Lyons*, 330 N.C. 298, 412 S.E.2d 308 (1991)).

Defendant contends that *Hartness* and *Lawrence* should not control this issue because, in those cases, all of the evidence offered at trial was ruled competent to support the charges alleged. He argues that this case differs because the jury could have based its indecent liberties conviction solely on the same acts that resulted in the sexual offense conviction, which we have now found invalid under the *corpus delicti* rule. We disagree. While the evidence presented at trial was insufficient to sustain the sexual offense conviction, it withstands the *corpus delicti* rule as to the conviction for indecent liberties with a child. Therefore, even if the jury based its conviction on the same facts as those underlying the sexual offense charge, it was appropriate for them to do so.

"[T]he crime of indecent liberties is a single offense which may be proved by evidence of the commission of any one of a number of acts." *Hartness*, 326 N.C. at 567, 391 S.E.2d at 180. A defendant is guilty of indecent liberties with a child if,

> being 16 years of age or more and at least five years older than the child in question, he either:
>
> (1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or
>
> (2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.

N.C.G.S. § 14-202.1 (2007). Defendant's extrajudicial confession alone establishes all of the elements of indecent liberties with a child; thus, under the *corpus delicti* rule, the question becomes whether independent corroborating evidence is strong enough to prove the trustworthiness of the confession. As discussed above, Jonathan's testi-

mony regarding defendant's statements made immediately after the extrajudicial confession is not evidence independent of the confession and is not sufficient corroboration evidence. However, after reviewing the entirety of the record, we find there is strong corroborating evidence to establish the trustworthiness of defendant's extrajudicial confession as to the indecent liberties charge.

First, defendant's trial testimony mirrors his extrajudicial confession in that he admits that during the first visit, he was drunk and alone with K.L.C. on Jonathan's bed *with his penis exposed*. This evidence strongly corroborates defendant's extrajudicial confession admitting to an indecent liberty against K.L.C. and satisfies the requirements of the *corpus delicti* rule. The jury also heard K.L.C. testify that defendant grabbed her by the shoulders, undressed her, and exposed himself during the second visit. Therefore, it was proper for the jury to consider the confession, along with the other evidence presented at trial, to determine if defendant committed the crime of indecent liberties with a child. Because the jury could have found that defendant's acts during the first or second visit constituted an indecent liberty with a child, it is immaterial that the trial court did not give specific instructions as to which of those acts were at issue. *See Lawrence*, 360 N.C. at 375, 627 at 613. After receiving correct instructions on the law, the jury was unanimous in deciding that defendant committed the offense of indecent liberties with a child. As such, we find no plain error and affirm defendant's conviction for indecent liberties with a child.

## CONCLUSION

Because we hold that there was insufficient evidence under the *corpus delicti* rule to satisfy the "sexual act" element of first-degree sexual offense, we affirm the Court of Appeals' reversal of defendant's conviction on that charge.

We further hold that the jury instructions regarding the indecent liberties charge were not confusing and did not constitute plain error. We thus reverse the portion of the Court of Appeals' opinion that concluded otherwise and granted defendant a new trial on this issue.

[3] The Court of Appeals found it unnecessary to address defendant's remaining assignments of error based on its finding that these matters were unlikely to occur at a new trial. Because we reverse the Court of Appeals' decision granting defendant a new trial, we remand this case to that court for consideration of defendant's remaining

ANDREWS v. HAYGOOD

[362 N.C. 599 (2008)]

assignments of error as they relate to the indecent liberties conviction. If, after reviewing defendant's remaining assignments of error the Court of Appeals finds no error, we instruct that the case be further remanded to the Superior Court for resentencing as to the indecent liberties conviction.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Justice TIMMONS-GOODSON concur in the result only.