NO. COA13-1283

NORTH CAROLINA COURT OF APPEALS

Filed:  17 June 2014

STATE OF NORTH CAROLINA


v.

GREGORY PARKS

Wilson County
Nos. 12 CRS 3002-3


Appeal by defendant from judgments entered 11 February 2013 by Judge Quentin T. Sumner in Wilson County Superior Court. Heard in the Court of Appeals 5 March 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Joseph L. Hyde, for the State.*
>
> *M. Alexander Charns for defendant-appellant.*


McCULLOUGH, Judge.


Defendant Gregory Kent Parks appeals the denial of his motion to dismiss two counts of participating in the prostitution of a minor. Where the State failed to produce substantial, independent corroborative evidence to support the facts underlying defendant's extrajudicial statement, in violation of the *corpus delicti* rule, we reverse defendant's challenged convictions.

## I.  Background

On 10 September 2012, defendant was indicted on two counts of first-degree sexual offense in violation of N.C. Gen. Stat. § 14-27.4 and attaining habitual felon status. On 14 January 2013, defendant was charged by superseding indictment with two counts of participating in the prostitution of a minor in violation of N.C. Gen. Stat. § 14-190.19(a).

On 16 November 2013, Wilson County Superior Court Judge Milton F. Fitch entered an order, *sua sponte*, which provided the following:

> Upon review, the Court determined that in order to prevent any further delay of the Defendant's cases and guarantee Defendant's right to a speedy trial that the SBI laboratory expedite and conduct any and all testing of any materials submitted and held relating to these cases.
>
> This Court hereby orders that the N.C. SBI laboratory expedite and perform DNA analysis and any other requested testing on any and all materials submitted to and held by the N.C. SBI Laboratory in these cases; and a laboratory report of the results to these ordered analysis be returned to the submitting parties and to District Attorney's Office of the Seventh Prosecutorial District no later than December 21, 2012.

Prior to trial, on 1 February 2013, defendant filed a motion to dismiss the charges against him for failure by the State to test or properly preserve DNA specimens in his case and

for failure to follow a 16 November 2012 order requiring the SBI laboratory to conduct any and all testing of any materials submitted and held relating to defendant's case. The trial court denied this motion.

Defendant's trial commenced at the 4 February 2013 criminal session of Wilson County Superior Court. A.J. testified that on the evening of 15 June 2012, she was at home with her friend, D.T.[1] D.T. was on the phone with defendant. D.T. told A.J. that defendant "was going to give her some marijuana for free if I walked down there with her, so I walked with her down the street." Defendant lived "three houses down, right up the street." When A.J. and D.T. arrived at defendant's house, defendant answered the door and said, "[w]ill you come in?" After they walked inside, defendant closed the door behind them. A.J. testified to the following:

> Well, we got in the home, there was an older man [(defendant's father)] in a wheelchair in there, and he said, "Well, y'all can walk on back here, follow me to my room." He said, "I'm not going to give you the marijuana out here." [So] I followed [D.T.] and [defendant] back to his room. And when we got in the bedroom, he pulled out a knife.

---

[1]Because A.J. and D.T. were minors during the commission of the alleged crimes, both seventeen years old in 15 June 2012, initials are used to protect their identities.

Defendant had closed his bedroom door. Defendant put the knife to A.J.'s neck and said "he was going to kill me if I didn't take my clothes off. . . . He told both of us to take our clothes off before he killed us."

A.J. testified that defendant went into an adjoining bathroom, returned with pills, and told the girls "to take the pills or he was going to kill us." A.J. took one pill.

> After [defendant] got the pills and made us take them, he told us -- well, we were lying on the bed, and he just got on top of us -- on me first, and he started licking me on my vagina, and then he went over to [D.T.], and he started licking on her vagina, and then he told me to just wait until he finished her.

Defendant went back and forth between A.J. and D.T. until A.J. stabbed him with a scalpel in the head. A.J. testified that she had brought a scalpel from her house and kept it in her coat pocket. After stabbing defendant, A.J. and D.T. ran out of the bedroom and unsuccessfully attempted to exit the house through a locked side door. Defendant's father was telling defendant "to stop and to let us go and that he was tired of him doing it." While A.J. and D.T. were standing by the back door, defendant stated, "[w]ell, you made my dad mad, I'm going to kill you[.]" Defendant's father followed A.J. and D.T. back to the bedroom

"to get [our] clothes." After they put their clothes back on, defendant opened the door and A.J. and D.T. went home.

A.J. called the police. A.J. initially reported to police that she and D.T. were on their way to McDonald's when defendant "grabbed" them, pulled out a knife, forced them to take drugs and pills, and sexually assaulted them. She admitted at trial that when she first spoke with police, she did not "tell the truth at first, because I was afraid that I might get in trouble because I'm going to get some marijuana with a friend." In addition, A.J. testified that defendant did not solicit sex in exchange for money or marijuana.

D.T. testified that on the evening of 15 June 2012, she was at A.J.'s house when defendant called her. Defendant said "he was going to give [A.J.] a bag of some weed[.]" D.T. testified that there was no agreement between defendant and herself for sex, an exchange of marijuana for sex, or an exchange of money for sex. A.J. and D.T. walked to defendant's house. Defendant took them into his bedroom. The three sat on his bed and defendant took out pills from his pocket. Defendant then proceeded to pull out a pocketknife and stated, "I'm crazy, I've been doing this for years, and y'all -- y'all take off y'all's

clothes now. I ain't playing with y'all." D.T. used the bathroom that was adjoined to the bedroom and called the police.

Defendant forced D.T. and A.J. to take their clothes off and lay on the bed. Defendant put his "tongue in [their] vagina[s]." D.T. grabbed a scalpel from a pocketbook, passed it to A.J., and A.J. stabbed defendant in the back of his head. A.J. and D.T. ran out of the bedroom, but encountered a locked door. Defendant's father told defendant, "Gregory, just let them go, just let them go." Defendant began shouting, "[d]addy, shut up. Y'all going to make my daddy have a heart attack. You shut up." Defendant's father then followed A.J. and D.T. back to defendant's bedroom and they put on their clothes. Afterward, A.J. and D.T. left defendant's home, returned to A.J.'s house, and called the police.

D.T. admitted that she lied in her first statement to the police when she reported the following:

> Well, the first time I told -- I told that we had went -- we was on the way to McDonald's and he had snatched us up; which, it was a lie. I knew it was a lie when we told y'all that we was going to McDonald's and stuff and he snatched us up. That ain't it. It really was that we had went to go do some weed, like, he had called the phone and said he was gonna give us [weed.]

Detective Michael Thomas Harrell of the Wilson Police Department testified that on the morning of 16 June 2012, defendant gave the following statement to police:

> On Wednesday, I called [A.J.] for the first time. I see her around the neighborhood and say, 'Hey,' when I see her. She had some drama on Wednesday, so I called her to see what happened. We talked for about an hour before she asked me if I could get any weed. I told her I might could get some weed. She said she would get back up with me on Friday. I tried to call her . . . She called me back, and I told her I had something for her. She asked if I had any money. I said, 'Yeah, I got some money.' She said she was waiting on her friend. She called me back about three times and asked which house to come to. . . . [A.J.] asked, and said, "You are supposed to have something waiting on me." I said, "Why, did you bring something?" We went back to my room and I asked what they were working with. They both took their clothes off. [A.J.] asked about the money, again, and I played it off, because I didn't have much money for them. They told me to get them going, so I was touching on them and eating them out, switching back and forth. When I went back down on [D.T.], [A.J.] hit me in the back of the head, and I said, 'What the f***?' She went for the door. I think she went in the drawer where I had pointed to earlier when I said I got some money. I don't know if they set me up or not.

On 11 February 2012, a jury found defendant guilty of both counts of participating in the prostitution of a minor and not guilty of both charges of first-degree sexual offense.

Defendant pled guilty to having attained habitual felon status. Defendant was sentenced to two consecutive terms of 127 to 165 months. Defendant appeals.

## II. <u>Discussion</u>

On appeal, defendant argues that the trial court erred by (A) denying his motion to dismiss two counts of participating in the prostitution of a minor based on insufficiency of the evidence and based on a fatal variance between the indictments, jury charge, and proof at trial; (B) admitting evidence in violation of Rule 404(b) of the North Carolina Rules of Evidence; (C) violating his constitutional rights under the Sixth Amendment of the United States Constitution; (D) denying his motion to dismiss based on a failure to obey a court order to test evidence; and (E) allowing amendment of the superseding indictments.

## A. <u>Motion to Dismiss the Charges of Participating in the Prostitution of a Minor</u>

Defendant argues that the trial court erred by denying his motion to dismiss the charges of participating in the prostitution of a minor charges for insufficiency of the evidence. Specifically, defendant contends that the State failed to present sufficient evidence that defendant "patronized

a minor prostitute." Defendant argues that the State erroneously relied solely on defendant's extrajudicial statement to prove his guilt, without providing other corroborating evidence in violation of the *corpus delicti* rule. We agree.

Before reaching the merits of defendant's arguments, we address the State's contention that defendant failed to raise the issue of a violation of the *corpus delicti* rule at trial and that, as a result, he has failed to preserve this issue for appellate review. Pursuant to Rule 10(a)(1) of the North Carolina Rules of Appellate Procedure, we note that in order to preserve an issue for appellate review,

> a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion.

N.C. R. App. P. Rule 10(a)(1) (2013). However, after thoroughly reviewing the transcript of defendant's trial, we hold that although defense counsel did not use the exact words "*corpus delicti*" in arguing that the trial court grant defendant's motion to dismiss the charges of promoting the prostitution of a minor based on the insufficiency of the evidence, the substance

of the argument was sufficiently presented to the trial court. Accordingly, we proceed to the merits of defendant's arguments. *See State v. Ezell*, 159 N.C. App. 103, 106, 582 S.E.2d 679, 682 (2003) (holding that "[a]lthough defendant did not raise his double jeopardy argument using those exact words, the substance of the argument was sufficiently presented, and more importantly, addressed by the trial court in finalizing its instructions to the jury").

> When reviewing a defendant's motion to dismiss a charge on the basis of insufficiency of the evidence, this Court determines whether the State presented substantial evidence in support of each element of the charged offense. Substantial evidence is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion.

*State v. Hunt*, 365 N.C. 432, 436, 722 S.E.2d 484, 488 (2012) (citation omitted). "This Court reviews the trial court's denial of a motion to dismiss *de novo* and views the evidence in the light most favorable to the State, giving the State every reasonable inference therefrom, and resolving any contradictions or discrepancies in the State's favor." *State v. Miles*, __ N.C. App. __, __, 730 S.E.2d 816, 822 (2012) (citation omitted).

In light of these principles, we consider the elements of the offense of participating in the prostitution of a minor. Pursuant to N.C. Gen. Stat. § 14-190.19[2],

> [a] person commits the offense of participating in the prostitution of a minor if he is not a minor and he patronizes a minor prostitute. As used in this section, "patronizing a minor prostitute" means:
> (1) Soliciting or requesting a minor to participate in prostitution;
> (2) Paying or agreeing to pay a minor, either directly or through the minor's agent, to participate in prostitution; or
> (3) Paying a minor, or the minor's agent, for having participated in prostitution, pursuant to a prior agreement.

N.C. Gen. Stat. § 14-190.19 (2011).

Defendant relies on the North Carolina Supreme Court's holding in *State v. Smith*, 362 N.C. 583, 669 S.E.2d 299 (2008). In *Smith*, the issue before the Court was whether there was substantial corroborating evidence independent of the defendant's extrajudicial confession sufficient to sustain a conviction for first-degree sexual offense. *Id.* at 585, 669 S.E.2d at 301. The Court noted that in order to find a

---

[2]We note that, effective 1 October 2013, N.C. Gen. Stat. § 14-190.19 was repealed by Session Laws 2013-368, s. 4. The current statute is applicable to offenses committed on or after 1 October 2013. However, because the events of this case took place on 15 June 2012, the former statute applies.

defendant guilty of first-degree sexual offense, the State must prove, beyond a reasonable doubt, that

> (1) the defendant engaged in a sexual act with a victim who is under the age of thirteen, and (2) the defendant is at least twelve years old and at least four years older than the victim. A sexual act, as defined by statute, means "cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body[.]" Fellatio is defined as "any touching of the male sexual organ by the lips, tongue, or mouth of another person."

*Id.* at 592-93, 669 S.E.2d at 306 (citations omitted). The *Smith* Court stated that "[u]nder the *corpus delicti*[3] rule, the State may not rely solely on the extrajudicial confession of a defendant, but must produce substantial independent corroborative evidence that supports the facts underlying the confession." *Id.* at 588, 669 S.E.2d at 303 (citing *State v. Parker*, 315 N.C. 222, 337 S.E.2d 487 (1985)).

The *Smith* victim "twice denied that a first-degree sexual offense ever occurred." *Id.* at 593, 669 S.E.2d at 306. In reviewing the defendant's extrajudicial confession, the defendant provided that the victim "unzipped his pants, removed

---

[3]"The term *corpus delicti* literally means 'body of the crime.'" *State v. Smith*, 362 N.C. 583, 589, 669 S.E.2d 299, 304 (2008) (citations omitted).

his penis, and *attempted* fellatio, but that he could not achieve an erection because of his alcohol consumption." *Id.* (emphasis in original). The *Smith* Court stated that taking into consideration the defendant's extrajudicial confession alone, "a jury could not determine beyond a reasonable doubt that [the victim's] mouth ever made contact with [the] defendant's penis, which is a required element in a sexual offense prosecution." *Id.* at 593-94, 669 S.E.2d at 306.

The State argued that several pieces of corroborative evidence, along with the defendant's extrajudicial confession, were sufficient under the *corpus delicti* rule to sustain a conviction for first-degree sexual offense, but the *Smith* Court disagreed. The State first argued that the defendant's trial testimony that he felt "something" touch his penis was strongly corroborative, but the Court held that, "[l]ike the extrajudicial confession, this statement is also vague; it is not clear from the record what this 'something' was." *Id.* at 594, 669 S.E.2d at 307. Next, the State argued that defendant's statement to the victim's brother that "he had let [the victim] give him oral sex" was strongly corroborative. The *Smith* Court held that the corroborating evidence supporting the defendant's extrajudicial confession must be substantial and *independent*,

and that this statement was not independent because it was derived immediately following defendant's extrajudicial confession elicited by a detective. *Id.* Lastly, the State argued that several pieces of "opportunity evidence" – testimony from both the defendant and the victim that they were alone together in a bedroom as well as testimony from the victim's brother that he left the victim with the defendant – were sufficient to sustain the defendant's conviction. The *Smith* Court held that because "no independent proof, such as physical evidence or witness testimony, of any crime [could] be shown[,]" the opportunity evidence was not strong enough to establish the *corpus delicti* of first-degree sexual offense. *Id.* at 595-96, 669 S.E.2d at 307-308. Based on the foregoing, the *Smith* Court held that the State "ha[d] not met its burden [of providing] strong corroboration evidence relevant to the essential facts and circumstances of [the] defendant's extrajudicial confession" and reversed the defendant's conviction. *Id.* at 596, 669 S.E.2d at 308.

Similar to the facts found in *Smith*, in the case *sub judice*, although A.J. and D.T. gave several differing accounts of the events that took place on the evening of 15 June 2012, both A.J. and D.T. testified at trial that defendant did not

solicit sex from them in exchange for money or marijuana. Furthermore, we find defendant's extrajudicial statement regarding an alleged exchange of sex for money or marijuana with A.J. and D.T. to be vague. Defendant's extrajudicial statement provided the following, in pertinent part:

> [A.J.] asked if I had any money. I said, 'Yeah, I got some money.' She said she was waiting on her friend. She called me back about three times and asked which house to come to. . . . [A.J.] asked, and said, "You are supposed to have something waiting on me." I said, "Why, did you bring something?" We went back to my room and I asked what they were working with. They both took their clothes off. [A.J.] asked about the money, again, and I played it off, because I didn't have much money for them.

The State argues that "an agreement to exchange sex for marijuana might be inferred even without Defendant's statements" and that other independent evidence corroborated defendant's extrajudicial confession. However, after careful review, we are not persuaded. The record is insufficient to strongly corroborate the essential element that defendant patronized a minor prostitute in order to convict defendant of participating in the prostitution of a minor. Because the State did not meet its burden in violation of the *corpus delicti* rule, we hold that the trial court erred by failing to grant defendant's motion to

dismiss. Accordingly, we reverse defendant's conviction of two counts of participating in the prostitution of a minor.

Based on the disposition of defendant's first argument, it is unnecessary for us to address his remaining arguments on appeal.

Reversed.

Judges HUNTER, Robert C., and GEER concur.